DUNN, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 25—June 23, 1905.*

*Criminal law and practice: Bribery: Evidence: Trial: Reception of evidence: Immaterial error: District attorney: Argument to jury: Instructions to jury: Witnesses: Reputation.*

1. The ordinance of a city regulating buildings provided that the floor areas undivided by brick walls should not exceed a specified area. Provision was therein made for a building inspector, and that, in matters pertaining to the official action of the inspector, an arbitration should be allowed to persons feeling aggrieved by his official action in cases where he was vested with discretionary powers and where his action pertained to the security or insecurity of buildings, provided application was made therefor within forty-eight hours after written notice of the inspector's decision had been given. Application having been made to such inspector for a permit to erect a building, it was orally rejected because the plans and specifications obviously violated the building regulations, in that the floor areas within the specified walls were largely in excess of what was permitted, and this was communicated to the applicant. The evidence tended to show that thereafter the inspector suggested to the applicant that an arbitration might be undertaken, and that it would require a certain sum of money to secure proper action. More than forty-eight hours thereafter application was made for an arbitration, and such proceedings were had therein that a permit was issued, followed by the payment of the money the same day. *Held:*

   (1) That passing upon the application for the permit involved no exercise of discretion by the building inspector, and therefore no legal basis existed for the arbitration.

   (2) The failure to give written notice of the decision or order of the inspector denying the application, and failure to apply therefor within forty-eight hours after actual notice, were irregularities fatal to the legality of the arbitration.

   (3) The arbitration proceedings could not be relied upon as establishing, as matter of law, that the inspector had no legal authority or power to act upon and issue the permit in question.

   (4) It was for the jury to pass upon the facts and circum-

stances of the attempted arbitration as material evidence, in connection with the other evidence in the case.

2. In such case the evidence, stated in the opinion, is *held* to sustain a verdict finding the building inspector guilty of bribery.

3. When, following immediately upon a ruling excluding the answer to a question, the witness furnishes substantially the same information sought in the question excluded, such ruling is not prejudicial error.

4. Where, in a criminal action, after a ruling striking out a statement made by a witness as improper cross-examination, the same fact is adduced by the testimony of the accused, the record is freed from any error committed in striking out the statement.

5. In a criminal action the remarks of the prosecuting officer in his argument upon the evidence to the jury, and the remarks of the court in ruling on exceptions thereto, stated in the opinion, are *held* not prejudicial to the defendant.

6. In a criminal prosecution for bribery, a requested instruction: "Where evidence is offered which is susceptible of two constructions, one of which tends to guilt and the other to innocence, it is the duty of the jury to adopt the latter," does not embody a correct rule for the guidance of the jury in considering the evidence, since it amounts to a direction to the jury that any evidentiary fact submitted to their consideration must be considered as tending to prove innocence if it can possibly be so construed.

7. In a criminal prosecution for bribery a requested instruction: "You cannot convict the defendant on theory, suspicion, or speculation; and, unless you are satisfied beyond a reasonable doubt that defendant accepted said sum of money under an agreement or arrangement by which he was to issue or procure the issue of the permit in consideration of the defendant's receiving said sum, your verdict should be 'Not guilty,'" while not in form and words incorporated in the charge given, is *held* to have been embodied in the instructions stated in the opinion.

8. In a criminal prosecution for bribery the court refused a requested instruction: "Unless you find from the evidence that the check for $1,500 was given to the defendant under an agreement or arrangement with G. G. P. by which the defendant, in his official capacity, in consideration of his receiving the $1,500, should issue or cause to be issued the building permit, your verdict should be 'Not guilty,'" and gave the following: "But if you find from the evidence that the check for $1,500 was given and used for the purpose of procuring a withdrawal of an ordinance from

the common council, and not for the purpose of influencing the judgment, opinion, or action of the defendant in his official capacity, then your verdict should be 'Not guilty.' " *Held*, that the difference in phraseology between the requested and the given instruction did not have the effect of casting the burden of proof upon the accused as to the proposition involved, in view of a part of the charge which explicitly informed the jury of the legal presumption of innocence and that the burden of proving guilt rested upon the state.

9. In such case it appeared that the portion of the charge given in the last paragraph was a part of the statement wherein the court properly defined the offense for which the accused was on trial; gave the necessary facts that must be found to exist, beyond a reasonable doubt, as constituent elements of the offense, to warrant conviction; and then added that if the jury found the facts embodied in that part of the instruction, and which embodied what the accused averred by way of specific defense of fact to the claims made by the state against him on the evidence, they must acquit. *Held*, that such excerpt from the charge, when elucidated by reference to its context, could in no way mislead the jury or prejudice the accused.

10. In a criminal prosecution for bribery, in a part of the charge excepted to, the court informed the jury that, before they could find the defendant guilty, they must find from the evidence, beyond reasonable doubt, that the accused, at the time and place charged, accepted the check; that it was a thing of value; and that it was given and received under an express or implied agreement or understanding to influence defendant in his official action. The statement of the grounds upon which a conviction might be based included all the elements of the offense charged in the indictment. The court also used the word "corrupt" in stating the charge as preferred in the indictment and in defining the offense. *Held*, that the charge was sufficiently explicit and complete although it omitted the words "corrupt intent."

11. Such element of corrupt intent is not eliminated by a concluding paragraph: "If it was so given and received, it is immaterial whether or not it did or could, in fact, influence him in his official action."

12. In a prosecution for bribery the court, among other things, instructed the jury: "Evidence as to the good reputation of the defendant for honesty and integrity was received, and you should consider such evidence, together with all the other evidence in the case, in arriving at your verdict. But if, from all the evidence in the case, you are satisfied of his guilt beyond a

reasonable doubt, then it is immaterial what his reputation has heretofore been as to honesty and integrity." *Held:*

(1) Such instruction was not objectionable as leading the jury to disregard this defensive evidence of the good reputation of the accused.

(2) Neither did it withdraw such evidence from the consideration of the jury.

(3) Neither did it discredit such evidence as immaterial proof in the case.

ERROR to review an order of the municipal court of Milwaukee county: A. J. VINJE, Judge. *Affirmed.*

Plaintiff in error was convicted upon an indictment found by a grand jury for Milwaukee county, charging him with having violated the provisions of sec. 4475, Stats. 1898. After verdict he filed an application for a new trial under sec. 4719, Stats. 1898, which application was denied by the trial court, whereupon he prosecuted a writ of error out of this court for a review of the order denying the application for a new trial, and applied for a stay of proceedings and admission to bail during the pendency of the case in this court.

The plaintiff in error, while acting as building inspector for the city of Milwaukee, is charged with the offense of having accepted the sum of $1,500 from the Pabst Brewing Company, under an agreement with the agent and representative of the brewing company to the effect that this sum so paid him by the brewing company, and so accepted by the plaintiff in error, was for the corrupt purpose of influencing him in his official opinion, judgment, or action as building inspector, in passing on an application to grant the brewing company a permit to erect a building within the city of Milwaukee. It is without dispute that plaintiff in error was the duly appointed and qualified building inspector of the city of Milwaukee at the time of the alleged unlawful transactions, and that, as such official, it was his duty to pass upon applications for the erection of buildings within the city. The evidence produced and submitted to the jury tended to

show that the brewing company in the early part of November, 1900, through its agent and architect, one F. Charles Peter, submitted to the inspector of buildings plans and specifications for a bottling house which it contemplated building on its real estate in the city of Milwaukee, to be used in conducting the brewing business; that, when such plans and specifications were submitted for inspection at the office of the inspector of buildings, for the purpose of securing a permit for the erection of this bottling house, Mr. Peter was informed that no permit could be granted for the construction of the building as planned and specified, for the reason that the floor areas undivided by brick walls exceeded the areas allowed between and within walls by the building regulations of the city. Mr. Peter communicated the fact of his failure to obtain a permit to construct the building as planned and specified to his principals, the officers of the brewing company. It was not shown that plaintiff in error personally communicated with Mr. Peter at this time. The evidence also tends to show that subsequently, and before November 13th, plaintiff in error had an interview with Gustav G. Pabst, the vice-president of the company, wherein he informed Mr. Pabst that the plans were not in accordance with the building laws of the city—that the floor space not inclosed by walls was larger than the ordinances permitted,— and he at that time informed Mr. Pabst that the permit was refused on that ground; that the brewing company on the 13th of November caused an ordinance to be introduced in the common council authorizing a permit to issue as applied for; that while such ordinance was pending and before November 15th, Mr. Pabst, finding it inconvenient to await the action of the council, had another interview with plaintiff in error and was informed that arbitration proceedings might be undertaken, but that no permit could issue until the ordinance had been withdrawn from the council; that Mr. Pabst was then informed by plaintiff in error that it would require the

sum of $1,500 to secure proper action on and disposition of the ordinance, so that a permit might be granted, or to get a permit; and that upon consideration of this matter it was agreed that an arbitration was to be applied for by Mr. Pabst, and that if a permit was issued the amount would be paid. On November 15th Mr. Pabst filed a written request for arbitration in the office of the inspector of buildings, accompanied by a sum of money sufficient to pay the expense of the arbitration, and designating one of the arbitrators. Plaintiff in error thereupon designated another arbitrator, and the two so named selected a third person. These three met on the 16th of November at the brewing company's place of business, and, after inspecting the plans and specifications, they made and filed an award in the building inspector's office to the effect that the proposed building, as shown by the original plans and specifications submitted to the inspector of buildings, complied with the building laws, and that a permit should be granted. After the filing of this report defendant in error directed that a permit issue, and it was so issued November 17th. The $1,500 check was given by the brewing company and received by the plaintiff in error on the same day. The plaintiff in error testified that it was understood between himself and the representative of the brewing company that none of the money was for his own use or benefit, but that it was to be paid to other persons for the sole purpose of securing the withdrawal of the ordinance from the common council, and that it was so paid over by him to one George Porth, now deceased, and that none of the money was retained by him. The ordinances in force at the time of these transactions relating to the construction and maintenance of buildings in the city of Milwaukee provided for written applications to the inspector of buildings for permits to construct buildings, and prescribed the conditions upon which permits were to be granted and upon what grounds they were to be refused. They also provided that

persons might appeal from the inspector's determination to arbitration "in cases where discretionary power to estimate the damages to buildings and their roofs is given to the inspector, as also in questions relating to the security or insecurity of buildings," and in all cases where discretionary powers are given by the ordinance to the inspector. It is further provided that "the person wishing to make such appeal shall do so within forty-eight hours after written notice of the decision or order of the inspector has been given. An appeal made later than forty-eight hours after serving of the notice of the inspector shall not entitle the applicant to arbitration." They also prescribed the limit of floor areas between walls in the different classes of buildings, and the kind of walls required for inclosing and partition walls, and specifications as to openings therein. The case was submitted to the jury upon the evidence and under instructions, who thereupon returned a verdict of guilty of the charge preferred in the indictment.

For the plaintiff in error there was a brief by *Fiebing & Killilea,* and oral argument by *H. J. Killilea.* They contended, *inter alia,* that, the exact purpose for which the check was given and received being averred in the indictment, this material averment must be proved as laid. *State v. Meysenburg,* 171 Mo. 1, 71 S. W. 229, 234–236; *State v. Green,* 7 Wis. 676; *State v. Butler,* 178 Mo. 272, 77 S. W. 560, 573, 577; *People v. Markham,* 64 Cal. 157, 30 Pac. 620. This rule obtains in Wisconsin even in civil cases. *Flint v. Jones,* 5 Wis. 424; *Eilert v. Oshkosh,* 14 Wis. 586; *Fairbanks v. Isham,* 16 Wis. 118; *Richards v. Worthley,* 5 Wis. 73; *Walker v. State,* 96 Ala. 53, 11 So. 401.

For the defendant in error there was a brief by the *Attorney General, F. E. McGovern,* district attorney, and *Walter D. Corrigan,* assistant attorney general, of counsel, and oral argument by *Mr. Corrigan.* They contended, *inter alia,* that when improper arguments are made by counsel the ad-

-verse and complaining counsel must not only object to the remarks without delay, but must preserve an exception, so that the counsel making such improper remarks may have an opportunity of correcting them, and so that the trial court can rule, and instruct the jury to disregard the remarks, if the trial court regards them as improper and unwarranted. *Gutzman v. Clancy,* 114 Wis. 589, 595, 596; *Firmeis v. State,* 61 Wis. 140; *Hacker v. Heiney,* 111 Wis. 313, 320; *Williams v. State,* 61 Wis. 281, 290; *Rollins v. State,* 59 Wis. 55; *Clifford v. State,* 58 Wis. 113, 124. If the improper remarks of counsel do not prejudice the party complaining there is no material error. *Gutzman v. Clancy,* 114 Wis. 589; *Brown v. Swineford,* 44 Wis. 282, 292; *Hard'ke v. State,* 67 Wis. 552; *Schillinger v. Verona,* 88 Wis. 317, 323; *Sullivan v. Collins,* 107 Wis. 291, 298; *Hinton v. Cream City R. Co.* 65 Wis. 323, 332. It is error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not; and if counsel persevere in arguing on pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side which may be good ground for a new trial. *Brown v. Swineford,* 44 Wis. 282; *Baker v. Madison,* 62 Wis. 137, 146; *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 298; *Friemark v. Rosenkrans,* 81 Wis. 359; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348. It is entirely proper for counsel to draw inferences from the testimony upon the argument. *Baker v. Madison,* 62 Wis. 137, 147; *Sasse v. State,* 68 Wis. 530, 535; *Waterman v. C. & A. R. Co.* 82 Wis. 613, 637. If counsel, upon objection by his opponent, admits the error by withdrawing the remark, and the court instructs the jury not to consider such improper remark, there is no error. *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 394. When an attorney desists from making improper remarks when he is called to order by the trial court for so doing, there is

no prejudicial error. *Grace v. McArthur,* 76 Wis. 641,. 652, 653. Remarks objected to held improper and then. withdrawn furnish no ground for reversal. *Roche v. Pennington,* 90 Wis. 107, 113. Any remarks concerning matters which are directly or indirectly, remotely or collaterally in issue, or made in apparent response to or suggested by remarks of opposing counsel, or concerning inferences which: may be drawn from testimony, constitute proper argument.. *Baker v. State,* 69 Wis. 32, 41; *Hoffman v. State,* 65 Wis.. 46, 48; *Fertig v. State,* 100 Wis. 301, 307. A broad discretion is allowed in argument. *Santry v. State,* 67 Wis. 65, 67. The presumption is against error. *Hoffman v. State,* 65 Wis. 46, 48. If the trial court exercises a fair and reasonable discretion, even though the remarks may be subject to criticism, there is no error. *Bliss v. State,* 117 Wis. 596. A party cannot avail himself in the appellate court as to prejudicial remarks of counsel unless the trial court has been pressed to a distinct ruling, and an exception then and there taken if such ruling is unfavorable. *Wegner v. Second Ward S. Bank,* 76 Wis. 242, 250; *Laue v. Madison,* 86 Wis. 453, 462; *Heucke v. Milwaukee City R. Co.* 69 Wis. 401; *Lowe v. State,* 118 Wis. 641; *Mayer v. Milwaukee Street R. Co.* 90 Wis. 522, 527; *Mulcairns v. Janesville,* 67 Wis. 24, 35. This is but a further exposition of the principle of law and practice, that, where a party complains, he must with reference to the subject matter of the complaint take timely objection, and without delay preserve an exception. *Knoll v. State,* 55 Wis. 249; *Rollins v. State,* 59 Wis. 55; *Grottkau v. State,* 70 Wis. 462; *Porath v. State,* 90 Wis. 527; *In re Roszcynialla,* 99 Wis. 537, 538; *Lowe v.. State,* 118 Wis. 641.

The following opinion was filed March 14, 1905:

SIEBECKER, J. It is urged that the court erred in denying the motion for a new trial for want of sufficient evidence to warrant a conviction of the offense charged in the indict-

ment. This contention is based upon the ground (1) that there was no application pending before plaintiff in error, as inspector of buildings, for a permit to construct the building in question at the time it is claimed the offense was committed, or which might come before him, in his official capacity, for his vote, opinion, judgment, or action thereon; and (2) that the check referred to was not received by him from Mr. Pabst under an agreement or understanding between them that his official opinion, judgment, or action was to be thereby corruptly influenced.

As to the first claim it is asserted that the evidence shows that the accused could exercise no official authority in respect to the issuance of the building permit at the time it is alleged the offense was committed, because the evidence establishes that the application for such permit had theretofore been passed upon by him and denied, and was then pending before arbitrators, which action had removed it beyond his jurisdiction and deprived him of all power in the matter. This leads necessarily to the inquiry concerning the legality of the arbitration proceeding. The state claims that the arbitration proceeding was void for want of any basis on which to institute it under the provision of the ordinance; that the necessary steps therefor were not taken by the parties; and also that the evidence shows that the proceeding was collusively and unlawfully instituted under an agreement between the accused and Mr. Pabst for the corrupt purpose, and under this pretense to shield him in perpetrating the offense charged. The provisions of the ordinance providing for arbitration in matters pertaining to the official action of the inspector of buildings are to the effect that an arbitration shall be allowed to persons feeling aggrieved by the action of the inspector in cases where he is vested with discretionary powers in estimating certain damages, and where he is vested with and required to exercise other discretionary powers, or in cases where his action pertained to the se-

·curity or insecurity of buildings. It is clear from the un-
contradicted facts in evidence that the application by the
Pabst Brewing Company for a permit to erect this bottling
house involved no exercise of any discretion by the accused
as building inspector. He informed Mr. Pabst, and in-
·sisted upon the trial, that he could not grant the permit ap-
plied for, because the plans and specifications obviously vio-
lated the building regulations of the city, in that the floor
areas within the specified walls were largely in excess of
what was permitted and allowed by such regulations; nor
does the plaintiff in error dispute or claim but that such was
the fact, and that no permit could properly be granted to
build the structure pursuant to the plans and specifications
submitted. Under these facts and circumstances it is appar-
ent that no question of discretion arose in passing upon the
application for a permit to erect this building, and that no
legal basis existed for the arbitration of the matter. It is
also provided in this ordinance that such an appeal to arbi-
tration shall be taken within forty-eight hours after written
notice of the decision of the inspector has been given, and
that an appeal taken thereafter shall not entitle the party to
an arbitration. The record discloses no written notice of the
decision or order of the inspector denying the application
made by Mr. Peter for the brewing company. It also appears
that he acted upon such application, and informed the com-
pany that it was denied, more than forty-eight hours before
the 15th day of November, the day of appeal by the applicant
for the permit. This failure to comply with the law is an-
other irregularity fatal to the legality of the proceeding. The
arbitration cannot be relied on as establishing, as a matter of
law, that the inspector of buildings had no legal authority
or power to act upon and issue the permit in question. In
this state of the case it was for the jury to pass upon the facts
and circumstances of the alleged arbitration as evidence ma-
terial to the question at issue, in connection with the other

evidence in the case. It is also urged that under such a rul-
ing all the credible evidence in the case shows that the check
was given and received by the accused under an agreement
and understanding, and that it was in fact used for a purpose,
wholly different and foreign to the one charged in the indict-
ment, namely, that it was intended for the purpose of, and
was in fact given and used in securing, the withdrawal of
the ordinance from the council. We cannot say the evidence
can be viewed only in this light. Considering the facts and
circumstances adduced in evidence, as applied to the question
of guilt or innocence, they may reasonably and legitimately
be interpreted and considered by the jury as showing that the
accused understood that he could grant this permit notwith-
standing the violation of the building regulations in doing
so; that his transaction with Mr. Pabst was designed to in-
duce Mr. Pabst to become a party to a plan for the issuance
of this permit for a money consideration, and to employ the
arbitration as a cover of his corrupt purpose. It is true the
evidence on which such inferences are based is contradicted
or explained by other evidence in the case. This, however,
was the subject for the consideration of the jury in weighing
all the evidence and determining the truth of the matter. We
are therefore persuaded that the court held correctly that the
evidence sustained the verdict finding the accused guilty of
the offense charged in the indictment.

The next assignment of error argued pertains to the exclu-
sion of testimony. The accused, testifying, stated: "I don't
know whether I took the advice of the legal department of
the city of Milwaukee on that particular arbitration or not."
He was then asked: "You say you do not recollect whether
you did in this particular instance. Had you previously
advised with the city department with reference to the arbi-
tration of such proceedings under that ordinance?" This
question was excluded upon objection. This ruling is fol-
lowed by the evidence that he informed Mr. Pabst that noth-

ing could be done while the ordinance was pending before the common council, and the witness then testified: "In making that statement I had in mind advice given by the legal department of the city." This declaration, following immediately upon the ruling complained of, furnished substantially the same information sought for in the question excluded. Under such circumstances the ruling is not prejudicial error.

Another exception presented arises upon the striking out of the statement made by the assistant inspector while testifying, as improper cross-examination. He testified to the effect that he knew of the action of the board of arbitration upon this application when he issued the permit on November 17th. It seems that the fact as stated was proper to be submitted to the jury. The record shows, however, that this fact was thereafter adduced by the testimony of the accused in the following statement: "I informed Mr. Burmeister at the time I told him to issue the permit that a board of arbitration had so decided." This was submitted to the jury without any attempted contradiction by the state. This leaves the record freed from the error committed by the court in striking out the above statement.

It is claimed that remarks of the prosecuting officer in his argument upon the evidence to the jury, to which proper exception was taken, were improper at various times throughout the course of his comments, and that the remarks of the court in one of its rulings on such exceptions were prejudicial to the accused. We have examined all the instances to which attention is called, and, in addition, those on which argument is presented under this assignment of error, and we find nothing in the record on which to base a complaint. In all instances wherein exception was taken to the remarks of counsel as transgressing the bounds of legitimate argument, the court promptly and efficiently corrected him, and properly instructed the jury in respect thereto, so that they could not

in any way be misled and prejudiced; nor were these rulings made in any incorrect or faulty expressions by the court.

The court was requested to instruct the jury:

"Where evidence is offered which is susceptible of two constructions, one of which tends to guilt and the other to innocence, it is the duty of the jury to adopt the latter."

We are satisfied that this request does not embody a correct rule for the guidance of the jury in considering the evidence before them. It would amount to a direction to the jury that any evidentiary fact submitted to their consideration must be considered as tending to prove innocence if it can possibly be so construed. This would deprive juries of the right to give to evidence the significance which they find and believe to be its natural and reasonable interpretation, in view of all the facts and surrounding circumstances of the case. The duty of interpreting evidence and drawing inferences therefrom in criminal trials is peculiarly within the province and the good judgment of the jury, and should not be infringed upon by artificial rules for determining its weight, and limiting the inferences they might reasonably draw therefrom.

The court was also requested to instruct:

"You cannot convict the defendant on theory, suspicion, or speculation; and, unless you are satisfied beyond a reasonable doubt that defendant accepted said sum of money under an agreement or arrangement by which he was to issue or procure the issue of the permit in consideration of the defendant's receiving said sum, your verdict should be 'Not guilty.'"

This request, it is insisted, should have been given, because peculiarly applicable to the case, and because its equivalent was not submitted in the court's charge. True, the form and words employed in this request were not incorporated in the charge given, but the rule embodied was clearly and fully given. The jury were directly informed that they must scrutinize the evidence with the utmost caution, and that guilt

could only be inferred from evidence showing beyond reasonable doubt that all the elements of the offense were established; and in connection therewith the court called their attention to all the ingredients of fact necessarily involved in order to find the offense charged, as enumerated in the requested instruction.

Exception is taken to the refusal to instruct as follows:

"Unless you find from the evidence that the check for $1,500 was given to the defendant under an agreement or arrangement with Gustav G. Pabst by which the defendant, in his official capacity, in consideration of his receiving the $1,500, should issue or cause to be issued the building permit, your verdict should be 'Not guilty.'"

The court gave the following on this subject:

"But if you find from the evidence that the check for $1,500 was given and used for the purpose of procuring a withdrawal of an ordinance from the common council, and not for the purpose of influencing the judgment, opinion, or action of the defendant in his official capacity, then your verdict should be 'Not guilty.'"

The contention is made that the difference in phraseology between the requested and the given instructions had the effect of casting the burden of proof on the accused as to the proposition involved. We perceive no such effect from the phraseology employed; nor is the argument sustained when this part of the charge is taken in connection with that which explicitly informed the jury of the legal presumption of innocence and that the burden of proving guilt rested upon the state. It is further claimed that the instruction given is erroneous in that it required the jury to be convinced that the check was both given and used for the purpose of procuring a withdrawal of the ordinance from the common council, in order to give the defendant the benefit of this defense, and that it thus ignored the receipt and intent with which the check was received. It should be noted that the portion of the charge excepted to is part of the statement wherein the

court properly defined the offense for which the accused was on trial; gave the necessary facts that must be found to exist, beyond reasonable doubt, as constituent elements of the offense, to warrant a conviction; and then added that if they found the facts embodied in this part of the instruction, and which embodied what the accused averred by way of specific defense of fact to the claims made by the state against him on the evidence, then they must acquit. When separated from its context this phrase might be given a different significance from that which was evidently intended and conveyed to the jury when used in the proper connection; but, when elucidated by reference to what immediately preceded, then it is obvious it could in no way mislead the jury or prejudice the accused. It should also be observed that plaintiff in error is not in a situation to complain of this specific instruction, since the phrase complained of is the same as that submitted in the second paragraph of the requested instructions.

Another ground urged against the charge, for reversal, is that the court, in stating the elements of fact constituting the offense, of which the jury must be satisfied, to establish the crime charged against the accused, omitted the element of "corrupt intent." In the part of the charge specifically objected to, the court did inform the jury that, before they could find the defendant guilty, they must find from the evidence, beyond reasonable doubt, that the accused, at the time and place charged, accepted from the brewing company a check for $1,500; that it was a thing of value; that it was given and received under an express or implied agreement or understanding, to influence him in his official action upon the application for a permit to construct the building in question. This statement of the grounds upon which a conviction might be based included all the elements of the offense charged in the indictment, and, as such, embraced the element of corrupt intent. The court also employed the term "corruptly" in

stating the charge as preferred in the indictment, and in defining the offense. The charge was sufficiently explicit and complete in this respect, so that the jury could not have been misled thereby. *State v. Smith,* 72 Vt. 366, 48 Atl. 647, and other cases.

The paragraph last considered closes with the words:

"If it was so given and received, it is immaterial whether or not it did or could, in fact, influence him in his official action upon said application."

It is argued that this sentence eliminates the corrupt intent, as an element of the offense, which must exist as a fact in the mind of the accused at the time he is alleged to have entered into the unlawful undertaking between himself and Mr. Pabst. If the check was given and received by the accused with the understanding that it should influence him in his official action, then it is immaterial whether or not the accused was in fact influenced by the alleged bribe, or, if the conditions were changed, whether his action on the application could or could not have been influenced by the alleged bribe. If the corrupt intent existed when he received the check the offense is complete, though it transpired that his subsequent action was not, or could not be, influenced by it. We think such is the natural meaning of the charge, and that it must have been so understood by the jury.

The jury was instructed:

"Evidence as to the good reputation of the defendant for honesty and integrity was received, and you should consider such evidence, together with all the other evidence in the case, in arriving at your verdict. But if, from all the evidence in the case, you are satisfied of his guilt beyond a reasonable doubt, then it is immaterial what his reputation has heretofore been as to honesty and integrity."

This instruction is assailed as misleading to the jury, in that they were probably led to disregard this defensive evidence of the good reputation of the accused. It is obvious

that no such inference was probably drawn therefrom by the jury, since the court specifically instructed them to consider this evidence in connection with all the other evidence in the case, and, when so considered, determine upon the guilt or innocence of the accused. The concluding sentence does not withdraw this evidence from their consideration, nor does it discredit this evidence as immaterial proof in the case.

We find no error in the record upon the grounds assigned.

*By the Court.*—The order is affirmed, and the cause is remanded for further proceedings according to law.

Dodge, J., dissents.

A motion for a rehearing was denied June 23, 1905.