STATE, RESPONDENT, v. CASSILL ET AL., APPELLANT.

(No. 5,454.)

(Submitted September 8, 1924. Decided September 30, 1924.)

[229 Pac. 716.]

*Criminal Law—Grand Larceny—Promissory Notes—Banks and Banking—Information—Counts—Election of Remedies—Instructions—Evidence—Appeal and Error—Expert Witnesses —Verdict—Surplusage.*

Criminal Law—Information in Two Counts—Refusal to Require State to Elect—Error Cured by Withdrawal of One Count.
  1.   Refusal to compel the state to elect upon which one of two counts in the information it would proceed, if error, was cured by the court's withdrawal of one count from the jury's consideration at the close of the evidence.

Same—Instructions Given Without Objection—Appeal.
  2.   Error cannot be predicated upon the giving of an instruction to which no objection was interposed at the time of the settlement of the instructions.

Same—Count of Information and Evidence Relating to Count Withdrawn—Instruction—Proper Refusal.
  3.   Where one count of the information was withdrawn by the court from the consideration of the jury after conclusion of the evidence, an offered instruction that the jury should confine their deliberations to the remaining count, without specifically pointing out the testimony relating to the count which was withdrawn, was properly refused, since it was not within the province of the jury to determine what evidence was applicable to the withdrawn count.

Same—Instructions—Error must be Specifically Pointed Out at Settlement.
  4.   Under section 11969, Revised Codes, the supreme court is prohibited from considering any error in an instruction other than such as is specifically pointed out and excepted to at the settlement of the instructions.

Grand Larceny—Promissory Notes—Value—*Prima Facie* Case—Statutes.
  5.   An instruction in a prosecution for the larceny of promissory notes that the amount of money due on the notes or secured to be paid thereby and remaining unsatisfied was their value, was correct under section 11377, Revised Codes, and one offered by defendant to the effect that evidence relating to the instrument should be disregarded because it has not been shown that they had any value was properly refused, where one of the notes was introduced in evidence and the value of the other was shown by books of account, thus making out a *prima facie* case for the state.

1.   When prosecutor will be required to elect between two counts in information, see note in 92 **Am. Dec.** 660.

*Same—Instructions Numbered for Convenience—To be Considered in Their Entirety.*

6. Instructions to the jury are numbered for convenience only; they must be considered in their entirety, and if upon the whole they state the law correctly, the fact that one particular instruction omits reference to a material matter does not render it open to attack.

*Same—Good Character of Defendant—Instruction Held not Comment on Evidence.*

7. An instruction which after advising the jury to give full effect to evidence which tended to establish the previous good character of the defendant charged with grand larceny, concluded with the sentence that good character, however, must not be taken as an excuse or justification for a crime where the proof altogether shows beyond a reasonable doubt that the defendant is guilty of the crime charged, *held* not open to the complaint that the court by it intimated that the evidence established the guilt of the defendant.

*Same—"Steal"—Definition Need not be Repeated in Instructions.*

8. Where in a prosecution for grand larceny the word "steal" had been sufficiently defined in an instruction, it was not necessary to repeat the definition in a subsequent one wherein it was used.

*Same—Proof—Moral Certainty of Truth of Fact Sufficient.*

9. The provision of section 10491, Revised Codes, that the law does not require demonstration, moral certainty only or that degree of proof which produces conviction in an unprejudiced mind being sufficient, is applicable in the trial of criminal cases.

*Same—Proof—"Beyond Reasonable Doubt" and "Moral Certainty" Synonymous.*

10. Where the court, after instructing the jury that defendant could be convicted only upon evidence which established his guilt beyond a reasonable doubt, gave the further instruction that the law did not require demonstration, that moral certainty or that degree of proof which produces conviction in an unprejudiced mind was sufficient, the contention that by giving the latter instruction the court had directed the jury that a verdict of guilty could be returned even though it did not establish guilt beyond a reasonable doubt, *held* without merit, the two phrases "beyond a reasonable doubt" and "moral certainty" as thus employed being synonymous.

*Same—Evidence—Improper Remark of Judge—Technical Error.*

11. A remark of the trial judge in passing upon an objection to a question asked a witness for the defense in a criminal cause to the effect: "I don't think that is very material; let him answer," while improper, *held* technical error and nonprejudicial when considered in connection with the particular circumstances.

*Same—Evidence—When Answer Properly Stricken.*

12. Where a question asked a witness called for a yes or no answer, and the answer made was not responsive to the question, it was properly stricken.

*Same—Expert Witnesses—Legal Effect of Transaction—Improper Testimony.*

13. Neither an expert nor a nonexpert witness may state the legal result or effect of a transaction, hence an expert in the banking

---

10. Reasonable doubt, what is and instructions concerning, see notes in 48 Am. St. Rep. 566; 16 L. R. A. (n. s.) 260.

business asked in behalf of . defendant, a banker charged with grand larceny, whether the act constituting the alleged crime was good banking was properly refused permission to answer.

Same—Special Injury to Person Whose Property Taken not Element of Offense.

14. Special injury to the person whose property was taken by defendant charged with larceny is not an ingredient of the offense, hence evidence that the bank of which he was an officer and whose property was taken was not injured or its reserve diminished was immaterial.

Same—Concealment of Crime—Book Entries and Letters Admissible, When.

15. Book entries and letters made and written by defendant for the apparent purpose of concealing the offense of larceny of promissory notes of a bank were admissible under the rule that where there is affirmative proof of a participation by him in the act charged, evidence of a desire or a disposition on the part of the accused to conceal the crime is admissible, and the fact that such evidence tended to show another and distinct offense did not render it inadmissible.

Same—Letters. Written After Commission of Crime—Admissibility.

16. Letters written by the accused to a bank after the alleged larceny was committed, with relation to the transaction for which he was on trial, were admissible as showing that his bank did not receive anything for the notes charged to have been taken, thus reflecting upon the question of his intention in taking the notes.

Same—Concealment of Crime—What Evidence Admissible.

17. The conduct and general demeanor of one charged with crime after its commission, his language, oral and written, his attitude and relations toward the crime, and his actions in the presence of those engaged in endeavoring to detect the criminal are always relevant and admissible.

Same—Trial—Character Witnesses—Limitation on Number of Witnesses.

18. Quaere: While it may be accepted generally that a trial court in the exercise of a sound legal discretion may by a rule of court limit the number of witnesses called to establish a single proposition and an appellate court will interfere only in a case of abuse of that discretion, was the ruling limiting the defendant to four character witnesses under the circumstance of the case proper?

Same—Character Witnesses—Exclusion of Testimony—Failure to Make Offer of Proof—Effect on Appeal.

19. Where four witnesses had testified to the good reputation of defendant and upon refusal of the court to permit a fifth one to testify on the same subject an offer of proof was not made, the supreme court cannot say that defendant suffered prejudice by exclusion of the testimony.

Criminal Law—Verdict—Recommendation of Jury That Sentence be Suspended—Surplusage—Judge may Disregard.

20. In the absence of a statute requiring effect to be given to the recommendation of the jury, after fixing the punishment of the defendant, that the sentence be suspended, the court was at liberty to treat it as surplusage and disregard it in imposing sentence.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

C. H. CASSILL and Scott K. Cassill were convicted of grand larceny and appeal from the judgment. Affirmed.

*Mr. C. A. Spaulding,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. E. J. Cummins,* County Attorney of Powell County, and *Mr. S. P. Wilson,* of Counsel for the State, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

C. H. Cassill and Scott K. Cassill were convicted of grand larceny and appealed from the judgment.

The information contained two counts. In the first it was [1] charged that the defendants, as bailees, feloniously took and converted to their own use, money and securities of the value of $10,000, the property of the First State Bank of Ovando, of which institution they were, respectively, the president and cashier. It is unnecessary to attempt an analysis of the second count. At the opening of the trial counsel for defendants requested the court to compel the state to elect upon which of the counts it would proceed. The request was denied and error is predicated upon the ruling. At the conclusion of the evidence the court withdrew the second count from the jury's consideration, so that if error was committed in refusing to compel the state to elect, it was cured. (31 C. J. 791.) Defendants offered instruction 1 as follows: "You are instructed that all evidence which tends to show the commission of the crime charged in the second count of the information, but which fails to show the commission of the crime charged in the first count of the information, is to be entirely disregarded by you in your deliberations." The offered instruction was refused, but instruction 4 was given as follows: "The second

count of the information has been withdrawn by the court from the consideration of the jury. Therefore you must confine your deliberations to the first count," *etc.*

Error cannot be predicated upon the giving of instruction 4 [2] since there was not any objection interposed to it at the time the instructions were settled; but defendants insist that the court erred in refusing to give their offered instruction 1 which, they argue, would have been more effective in accomplishing the purpose intended, namely, to obliterate from the minds of the jurors, as far as it was possible to do so, any impression which may have been made by evidence applicable only to the second count of the information. If the offered [3] instruction had been given, the jurors would have been required to segregate the evidence applicable only to the second count from all the other evidence, since the objectionable evidence was not pointed out specifically, and to accomplish this end the jurors would have been called upon to determine what evidence was applicable only to the second count, and that would have involved a decision of a question of law, a decision which the jurors were not competent to make and could not be required to make in a case of this character. Hence the court did not err in refusing the offered instruction. (*State* v. *Trosper*, 41 Mont. 442, 109 Pac. 858; 16 C. J. 965.)

Three notes of C. E. Holland for $6,500 and a note of [4] Scott K. Cassill for $2,850 were included in the property alleged to have been stolen. The defendants requested the court to charge the jury (offered instruction A) to disregard the evidence relating to these notes, upon the theory that it had not been shown that they were of any value. The request was denied and the court gave instruction No. 10, as follows: "You are instructed that in a prosecution for larceny of a promissory note, *or in a prosecution for obtaining the same by false and fraudulent representation or pretenses,* the amount of money due on said note, or secured to be paid thereby, and remaining unsatisfied, or which in any contingency might be collected thereon, is the value of said note."

The language italicized by us for convenient reference has no place whatever in the instruction, but counsel for defendants cannot complain in this court. Section 11969, Revised Codes, provides: "On such settlement of the instructions the respective counsel, or the parties, shall specify and state the particular ground on which the instruction is objected or excepted to, and it shall not be sufficient in stating the ground of such objection or exception to state generally that the instruction does not state the law, or is against law, but such ground of objection or exception shall specify particularly wherein the instruction is insufficient, or does not state the law, or what particular clause therein is objected to. * * * And no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions, as herein provided."

The record discloses that the only objection interposed to this instruction was the following: "To the giving of instruction No. 10 the defendants object upon the ground and for the reason that the same is an incorrect statement of the law and that it withdraws from the jury the issuable fact as to the value of the property claimed to have been the subject of the larceny charged in the information." Under the express provisions of the statute just quoted, this court is prohibited from considering the objection to the inclusion of the language italicized. (*State* v. *Brodock,* 53 Mont. 463, 164 Pac. 658; *State* v. *Bolton,* 65 Mont. 74, 212 Pac. 504.)

The question remains: Does the instruction, with the objectionable language eliminated, correctly state the law, or should the court have given defendants' offered instruction A? Section 11377 provides: "If the thing stolen consists of any evidence of debt or other written instrument the amount of money due thereon or secured to be paid thereby and remaining unsatisfied, or which in any contingency might be collected thereon, or the value of the property, the title to

which is shown thereby, or the sum which might be recovered in the absence thereof, is the value of the thing stolen.''

In the absence of a statute fixing a special standard by which the value of a promissory note is to be determined in any given instance, its value would have to be proved as in the case of other personal property (*Burrows* v. *State,* 137 Ind. 474, 45 Am. St. Rep. 210, 37 N. E. 271) ; but no one can challenge successfully the right of the legislature to fix *prima facie* the value of commercial paper for the purpose of a criminal prosecution, and since our legislature has prescribed such a standard, the court did not err in submitting it for the jury's consideration and use. The Holland notes were in evidence, and disclosed that the amount due on them was $6,500; the Scott K. Cassill note was not available as evidence, but the books of the bank disclosed that the amount due upon it was $2,850. This was sufficient to make out the state's *prima facie* case so far as the value of the notes was concerned, and to render inapplicable the defendants' offered instruction A.

The rule announced in defendants' offered instruction C was stated fully, though in different terms, in instruction 2 given by the court, and likewise the substance of offered instruction F was given in the court's instructions 18, 19 and 20.

Complaint is made of instruction No. 3, but it is a literal copy of section 10732, Revised Codes, and applicable to the facts of this case. Scott K. Cassill was prosecuted as a principal, and the evidence is ample to support that theory. While it is true, as defendants contend, that instruction 3 does not refer to the intention which is a necessary ingredient of the offense charged, instruction 11 does cover the subject fully.

[6] The instructions are numbered for convenience only; they are to be considered in their entirety, and if upon the whole they state the law correctly, the fact that one particular instruction omits reference to a material matter does not render it open to attack.

Neither instruction 13 nor instruction 28 is subject to the
[7] criticism that it comments upon the evidence. Instruc-
tion 13 is a copy of section 11384, Revised Codes, and instruc-
tion 28, after advising the jury to give full effect to the
evidence which tended to establish the previous good reputa-
tion of each of the defendants, concluded as follows: "Pre-
vious good character, however, must not be taken as an excuse
or justification for a crime, where the proof altogether shows
beyond a reasonable doubt that a defendant is actually guilty
of the crime charged or some one included therein. The lan-
guage is not well chosen, but when the instruction is read in
its entirety the jury could not have understood that the court
was intimating that the evidence in this case established the
guilt of either of these defendants. (*State* v. *Dunn*, 125 Wis.
181, 102 N. W. 935.)

Complaint is made that the word "steal" employed in
[8] instruction 14 was not defined, but it was defined suffi·
ciently by instruction 5, and it was not necessary to repeat
the definition every time the word was used.

The court charged that the defendants could be convicted
[9, 10] only upon evidence which established their guilt be-
yond a reasonable doubt, and the approved definition of "rea-
sonable doubt" was given. The court then gave instruction
23, as follows: "You are instructed that the law does not re-
quire demonstration, that is, such a degree of proof as, ex-
cluding possibility of error, produces absolute certainty,
because such proof is rarely possible. Moral certainty is only
required, or that degree of proof which produces conviction in
an unprejudiced mind." It is contended that by giving this
instruction the court reduced the standard by which guilt
might be determined below that which the law prescribes; or,
in other words, that instruction 23 permitted a verdict of
guilty to be returned upon evidence which satisfied an unpreju-
diced mind, even though it did not establish guilt beyond a
reasonable doubt. The contention is without merit. Instruc-
tion 23 is a copy of section 10491, Revised Codes, and the rule

which it promulgates is applicable in the trial of criminal cases. (*State* v. *Powers,* 39 Mont. 259, 102 Pac. 583; *State* v. *Fredericks,* 65 Mont. 25, 212 Pac. 495.) As employed in the statute and in the instructions given, the two phrases "beyond a reasonable doubt" and "to a moral certainty" are synonymous. (*State* v. *Martin,* 29 Mont. 273, 74 Pac. 725; *Commonwealth* v. *Costley,* 118 Mass. 1.) In *Territory* v. *Mc-Andrews,* 3 Mont. 158, the court said that moral certainty is the very highest grade of certainty that human testimony can produce, and the statute declares that moral certainty is that degree of proof which produces conviction in an unprejudiced mind.

Ten assignments of error are directed to alleged acts of [11] misconduct on the part of the judge who presided at the trial of this case. The first one will serve the purpose of illustration. A witness was asked to state when Scott K. Cassill was away from Ovando. In passing upon an objection to the question the presiding judge said: "I don't think that is very material; let him answer." Counsel for defendants took exception to the remark of the court, and suggest that it was error for the court thus to minimize the effect of their evidence; but they do not contend and could not contend that Scott K. Cassill was absent from Ovando at the time the alleged offense was committed; on the contrary C. H. Cassill testified that Scott K. Cassill was present at the time the notes and money were withdrawn from the Ovando bank and that he made the entries upon the books of the bank at that time.

It is the rule in this jurisdiction that the trial court shall not in the presence of the jury comment upon the evidence introduced, and the court did err in making the comment indicated; but the utmost that can be said of it is that it was a mere technical error. The witness failed to answer the question, and counsel for defendants did not see fit to insist upon an answer. Formerly it was the rule quite generally, and in this state particularly, that "error appearing, prejudice will be presumed"; but that rule was superseded in this state

many years ago by the more sensible rules declared by sections 11874 and 12125, Revised Codes, as follows:

"11874. Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right. * * *

"12125. After hearing the appeal, the [Supreme] Court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

We are satisfied that no one of the so-called acts of misconduct, nor all of them collectively, did or could prejudice either defendant in respect to any substantial right, and the same thing is to be said concerning a remark made by counsel for the state to which exception was taken.

Of the numerous assignments of error predicated upon [12] rulings of the trial court in admitting or excluding evidence many are trivial in the extreme. To illustrate: Matthew Brown, a character witness for defendant C. H. Cassill, testified that he knew Mr. Cassill in South Dakota. He was then asked: "Did you know what his general reputation in that vicinity for truth, honesty and integrity was?" To which the witness replied: "During the time I knew Mr. Cassill in South Dakota he was one of the most prominent citizens there." Upon motion of counsel for the state the answer was stricken, and error is predicated upon the ruling. That the ruling was correct does not admit of argument. The question called for a yes or no answer, and the answer made by the witness was not responsive to the question. After the answer was stricken, the witness answered the question, "Yes," and in response to the next interrogatory stated that Mr. Cassill's general reputation "was of the very best," and this answer was permitted to stand.

The defendants sought to show by an expert, a man of long [13] years of experience in the banking business, that the

transaction, of which the state complains conformed to good banking, did not reduce the reserve of the Ovando bank or injuriously affect that bank in any way. The offered evidence was excluded, and error is assigned to each of the rulings. Stated briefly, the record discloses that in April, 1921, the reserve of the Ovando bank became very low, and to replenish it the defendants drew two promissory notes for $5,000 each in favor of the Ovando bank, which notes they signed on April 28, 1921, and later secured them to be signed by other directors and stockholders. The defendants then assumed to sell (rediscount) these notes to the Northwestern National Bank of Minneapolis. They charged the Minneapolis bank with $10,000 and credited the Ovando bank with the like amount, and then, to make the Ovando bank's books balance, they withdrew from the assets of the Ovando bank the following: $650 in cash which they passed to the credit of C. H. Cassill who used it for his own private purposes; the Holland notes for $6,500 which C. H. Cassill used as collateral security for his individual loan; the Scott K. Cassill note for $2,850 which Scott took and destroyed or otherwise made way with, and they made the books of the Ovando bank show that these notes had been paid in full on April 28, and all this was done before either of the $5,000 notes had been signed by the other directors and stockholders, before the Minneapolis bank knew of the transaction, and before either defendant knew or could know whether the Minneapolis bank would rediscount the notes or either of them. Indeed, neither note was ever rediscounted, and the pretended credit of $10,000 in favor of the Ovando bank was never anything more than a mere paper asset.

It is idle for counsel to argue that defendants should have been permitted to prove by this expert that such a transaction is consonant with good banking. Good banking necessarily presupposes banking conducted according to law, so that the offer made was tantamount to a request to prove by an expert that the acts of the defendants conformed to the law, or,

stated differently, that in doing the acts which they did, the defendants were not guilty of any criminal offense. That this is the theory upon which the testimony was offered is made apparent. In their brief counsel for defendants say: "If persons charged with public offenses such as these are not permitted to show by those expert in the business of banking that their transactions in and about the affairs of the bank possessed legitimacy and constitute and are the correct and usual method pursued in the banking business, it is difficult to perceive how they could ever repel any empty charge of dishonesty or criminal conduct."

Neither an expert nor a nonexpert witness is permitted to state the legal result or effect of a transaction, and this rule is too well settled to admit of doubt. (*Wheeler* v. *State*, 42 Md. 563; *State* v. *Gibson*, 83 S. C. 34, 64 S. E. 607; 22 C. J. 637.) Whether the defendants took the property and, if they took it, whether the taking was with a felonious intent were questions to be solved by the jury. Whether the particular transaction in controversy constituted larceny was a question of law to be determined by the court. However persuasive the witness' opinion of the legality of the transaction might have appeared to the defendants, the court and jury were bound by the law as declared by the statutes. Evidence that the Ovando [14] bank was not injured or its reserve diminished was wholly immaterial. Special injury to the person whose property is taken is not an ingredient of the crime of larceny.

Over objection of the defendants the state introduced [15–17] in evidence entries made by the defendants in the books of the Ovando bank and three letters written by C. H. Cassill to the Minneapolis bank. The book entries made on April 28, 1921, indicated that the Holland notes and the Scott K. Cassill note had been paid, while the letters, written in May and June, 1921, disclosed that neither of the two $5,000 notes had been rediscounted to the Minneapolis bank but that negotiations for the rediscount of these notes were then pending.

Apparently it was the theory of the state that the book entries were made by the defendants for the purpose of concealing the offense alleged to have been committed by them, but whether that was the theory is immaterial. The evidence was admissible for the purpose indicated. In 16 C. J. 550, the rule is stated as follows: "Provided there is affirmative proof of a participation by him in the act charged, evidence of a desire or a disposition on the part of accused to conceal the crime is admissible." And the evidence was not rendered inadmissible because it tended to prove another and distinct offense. (*State* v. *Hopkins*, 68 Mont. 504, 219 Pac. 1106.)

The fact that the letters were written after the alleged offense was committed is not of any consequence. They tended to prove that the Ovando bank did not receive anything whatever for the notes and cash withdrawn by the defendants on April 28, and thereby reflected upon the question of their intention in taking the property. In 16 C. J. 549, it is said: "At least in so far as they tend to connect him with the crime and are not merely self-serving, the conduct and general demeanor of the accused after the crime, his language, oral and written, his attitude and relations toward the crime, and his actions in the presence of those engaged in endeavoring to detect the criminal are always relevant."

Four witnesses testified to the previous good reputation of [18-19] the defendant C. H. Cassill, and three witnesses testified to the previous good reputation of Scott K. Cassill. When defendants sought to introduce the testimony of another witness, Montgomery, as to the reputation of C. H. Cassill, the court interposed and refused to permit the testimony, stating that a rule of court "provides that no more than three witnesses will be called upon character." In answer to the contention of counsel for defendants that the court erred in its ruling, the attorney general insists that it is accepted generally that a trial court in the exercise of a sound legal discretion may limit the number of witnesses called to establish a

single proposition, and an appellate court will interfere only in a case of abuse of that discretion. (16 C. J. 859.) We conceive this to be the rule, but we would not be prepared to say that the limitation imposed in this instance was not unreasonable if the question were before us. The witness Montgomery had testified for the state upon a former trial, and it was the testimony given by the witness at that time which defendants desired to use. They did not make any offer of proof, however, and this court has no means of knowing whether the testimony, if it had been admitted, would have been relevant, material or of any evidentiary force. Under these circumstances we cannot say that the defendants suffered prejudice as a result of the court's ruling.

In passing we observe that in the list of cases cited in support of the text above (16 C. J. 859), no instance appears where the number of witnesses was limited to so few as three.

The jury fixed the punishment of each defendant at imprisonment in the penitentiary for not less than one year nor more than two years. With respect to the defendant Scott K. Cassill, it added "with the recommendation that the said sentence be suspended." The trial court declined to follow this recommendation, which was not a part of the verdict. In the absence of a statute requiring effect to be given to it, the court was at liberty to treat it as surplusage and disregard it. (16 C. J. 1110.)

Counsel for defendants have presented 100 specifications of claimed errors. In this multitude of assignments there appears almost a total lack of confidence in the substantial merits of the appeal, and that impression is not lessened, but rather emphasized, by the technical character of the contentions advanced in argument. We have examined with care each one of the specifications, but have commented upon only such of them as appeared to us to merit special consideration. We are satisfied that the defendants were awarded a fair and impartial trial, that the evidence is sufficient to justify the ver-

dict, and that the record does not disclose any reversible error.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

MR. JUSTICE RANKIN, being disqualified, did not hear the argument and takes no part in the foregoing decision.