**UNITED STATES of America, Appellee,**

v.

**UNIVERSAL MANUFACTURING COMPANY, Appellant.**

**No. 75–1176.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Dec. 4, 1975.

---

F. Russell Millin, Kansas City, Mo., for appellant.

Kurt P. Schulke, Sp. Atty., Dept. of Justice; Kansas City, Mo., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT, Senior District Judge.*

HENLEY, Circuit Judge.

Over a rather substantial period of time there has been in progress in the Western District of Missouri an investigation of alleged organized criminal activities and racketeering. One of the subjects of the investigation has been Universal Manufacturing Company, appellant herein, which is a corporation engaged in the manufacture and sale of certain products which are at least capable of being used in connection with some types of illegal gambling activity.

In early February, 1974 a federal grand jury sitting at Kansas City, Missouri caused a subpoena duces tecum to be issued calling for the production before the grand jury of appellant's interstate sales invoices covering a period extending from January 1, 1971 through July 31, 1972 and appellant's stock book showing changes in stock ownership from the date of appellant's incorporation down to July 31, 1972.

The appellant moved to quash the subpoena on the basis that its issuance amounted to an impermissible "fishing expedition," and the president of the corporation, Norman Wilner, refused to produce the corporate records as commanded. District Judge Elmo B. Hunter of the United States District Court for the Western District of Missouri overruled the motion to quash and pursuant to 28 U.S.C. § 1826 committed Mr. Wilner to jail until such time as he should see fit to produce the records. Both Mr. Wilner and his corporation appealed from those orders of the district court, and Wilner was permitted to remain at large on his own recognizance pending appeal.

On January 6, 1975 this court upheld the validity of the subpoena and also upheld the action of the trial court in committing Wilner under the provisions of § 1826. *In re Grand Jury Proceedings, Universal Manufacturing Co. v. United States,* 508 F.2d 684 (8th Cir. 1975).

On February 10, 1975 Universal turned the records over to the United States Attorney's office, and they appear to have been handed over in turn to the Kansas City office of the Federal Bureau of Investigation. That course of action was sanctioned by an order entered on the same day by Judge Hunter.

On the following day Universal filed a motion under Fed.R.Crim.P. 41(e) seeking a return of the records and a suppression of their use as evidence. Universal sought temporary relief by way of an order impounding the records in the hands of the clerk of the district court pending final disposition of the controversy.

The application for temporary relief was considered preliminarily on February 11 by Judge Oliver who, after conferring with counsel on both sides and after talking with Judge Hunter by telephone, entered an order placing the records in the hands of the United States Attorney and specifying that the FBI should not have access to them without prior judicial approval. Additionally, Universal's motion was placed on the docket of Judge Hunter under whose supervision the grand jury investigation was proceeding.

On February 21 Judge Hunter entered an order, the result of which was that the records were placed in the hands of J. Whitfield Moody, Esq., First Assistant United States Attorney for the Western District, for his review personally and with the assistance of investigative personnel of the FBI. The order provided that it should remain in force during the then current session of the grand jury, and that at the end of that session the records were to be filed under seal with the clerk until further order of the court.

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

Thereafter Universal filed a motion asking that the order of February 21 be rescinded and other motions asking that the records be impounded with the clerk, and that an evidentiary hearing be held after completion of discovery.[1]

On March 12, 1975 Judge Hunter, without holding any evidentiary hearing and without waiting for discovery to be completed, filed a "Memorandum and Order" denying Universal's motions. Some of the motions were treated as constituting collectively a motion for a protective order which was denied; however, the district court's Memorandum contained certain restrictions clearly designed to protect Universal from unreasonable or improper disclosure of the contents of the records. Universal promptly filed a notice of appeal and an application for a stay of the order of March 12, which application was denied.[2] Both sides have sought unsuccessfully to obtain a summary disposition of the appeal although the dispositions sought were opposite from each other as far as ultimate result was concerned.

For reversal Universal argues that the district court erred in denying its motions and seeks immediate return of its records. We find no error.

As we see it, the controversy before us has two separate and distinct aspects. The first relates to the validity of the subpoena that the grand jury caused to be issued. The second assumes that the subpoena was valid and relates to the question of access to the subpoenaed records and to the safeguards that should be taken to prevent improper disclosure of their contents.

As to the first aspect of the controversy, we agree with the district court that the question of the validity and propriety of the subpoena for the records was resolved adversely to Universal by this court in January, and that Universal had no right to relitigate that question in the proceedings above described that took place later in the current year.

Turning now to the second aspect of the case, we observe at the outset that the case does not involve the presence of any unauthorized person or persons in the grand jury room during the taking of testimony or during the deliberations of the grand jury; nor does the case involve any question of improper disclosure of grand jury testimony. The question involved is whether and to what extent representatives of an investigatory agency of the government, in this case the FBI, should be permitted to have advance access to documents that have been subpoenaed for presentation as evidence to a federal grand jury.

That question gains significance when it is realized that the documents in question would not have been available either to government counsel or to the FBI but for the grand jury subpoena.

Under Fed.R.Crim.P. 6(e) grand jury material and evidence is expressly made available to government counsel, and it may be assumed that such counsel may be trusted not to use or disclose improperly information that they may obtain from evidence that has been or is about to be presented to a federal grand jury, and indeed it is absolutely necessary that government counsel know in advance what evidence is to be presented to the grand jury if the presentation is to be orderly and meaningful. On the other hand, it is clear that if representatives of investigative agencies of the government are permitted unrestricted access to and use of material that has been subpoenaed at the request of the

---

1. Both before and after February 21 Universal propounded interrogatories to certain government officers and agents under Fed.R.Civ.P. 33. Those interrogatories have never been answered.

2. Prior to the submission of the case to this court the term of the grand jury that was sitting in 1974 and early 1975 expired. Apparently, the records were impounded until a new grand jury convened. It is our understanding that the new grand jury is continuing the investigation conducted by its predecessor, and it appears that the controversy about Universal's records is not moot.

grand jury abuses and constitutional deprivations may result.[3]

■ However, it is established that where such access is necessary to or promotes the success of the grand jury's investigation, and where the access to and use of the materials in question are properly restricted and supervised, a federal court may authorize government investigators who are involved in the matter which the grand jury is pursuing to have access to documents and other evidentiary matter subpoenaed by or presented to a federal grand jury. *See United States v. Hoffa,* 349 F.2d 20, 43 (6th Cir. 1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. United States District Court,* 238 F.2d 713 (4th Cir. 1956), *cert. denied sub nom., Valley Bell Dairy Co. v. United States,* 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957); *In re July, 1973 Grand Jury,* 374 F.Supp. 1334 (N.D.Ill. 1973); *In re William H. Pflaumer & Sons,* 53 F.R.D. 464 (E.D.Pa.1971); *United States v. Anzelmo,* 319 F.Supp. 1106, 1116 (E.D.La.1970); *United States v. Zirpolo,* 288 F.Supp. 993, 1015 (D.N.J.1968), *rev'd on other grounds,* 450 F.2d 424 (3rd Cir. 1971).

■ In determining whether investigative personnel should have access to grand jury material and in prescribing proper restrictions on that access and the use or disclosure of the material or its contents we think that a district court performs a function analogous to that which it performs when it is called upon under Fed.R.Crim.P. 16(d)(1) to regulate discovery in a criminal case, and that ultimately much must be left to the discretion of the district court.

Obviously, in some cases proper determination by the district court will require evidentiary hearings. But we do not think that such a hearing was necessary in this case or that it would have been particularly helpful.

■ We are dealing here with some 10,000 invoices covering individual sales of products taking place over an eighteen month period, and we are dealing with stock ownership and transfer records running back for a substantial period of time prior to July 31, 1972. In view of the volume and nature of the material involved, we think that it would have been completely unrealistic to have required the grand jury to consider this volume of evidence in its raw state without the benefit of prior analysis and summary, and we also think that it would have been unrealistic to require the staff of the United States Attorney to work with this evidence without the assistance of the investigative agency concerned.

The Memorandum and Order[4] of the district court did not require that the subpoenaed records be analyzed or summarized in advance by anyone. That was a matter that was left up to the grand jury itself.

The records were placed in the hands of First Assistant United States Attorney Moody and he and, of course, his superior, United States Attorney Hurn, were made responsible for them. The Order provided that if the grand jury so desired, the records might be analyzed and summarized by government counsel personally "and with the assistance of investigative personnel of the Federal Bureau of Investigation, if need be, to develop material for presentation to the grand jury." It was specified that the actions of the FBI in relation to the documents should be under the supervi-

---

**3.** As Professor Wright points out, while a corporation has no fifth amendment privilege against self-incrimination, it has a fourth amendment right to be immune from unreasonable seizures of its records. 1 Wright, Federal Practice & Procedure § 274, pp. 549–50, and cases there cited. And for purposes of discussion it may be assumed that a subsequent unreasonable disclosure of the contents of seized documents may be violative of the fourth amendment even though the original seizure was not in itself unlawful or unreasonable.

**4.** The Order proper of the district court was formally set out in a separate document signed by the clerk of the district court and filed on March 17, 1975.

sion of the United States Attorney and his assistants, and that after their presentation to the grand jury the documents were to be deposited with the clerk under seal to be held by him until further order of the court for eventual return to Universal.

The order did not expressly authorize the copying of any of the records. However, it was stipulated that if the grand jury desired to have some of the documents copied for its use in the investigation, the copies might be made. But, it was provided that the copies, if any, should be treated as originals and kept with the true originals and deposited with them under seal after the completion of the grand jury's investigation.

In view of the volume and nature of the documents involved we think that the action taken by the district court was not only permissible but was proper and practical as well, and that the legitimate interest of Universal in not having the documents or their contents improperly or unreasonably used or disclosed was adequately protected.

Affirmed.