STATE, Respondent, v. O'CONNOR, Defendant-Appellant.

*No. 75–579–CR. Argued January 5, 1977.—Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 671.)

264

For the plaintiff-appellee the cause was argued by *Melvin K. Washington,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *David J. Cannon* of Milwaukee.

ABRAHAMSON, J.   In a complaint filed July 10, 1975, defendant Walter F. O'Connor was charged with

two counts of violating sec. 221.40, Stats.[1] The first count alleged in substance that on or about November 1, 1972, the defendant, while he was president of the Algoma Bank, Algoma, Wisconsin, received for himself from Camp Dells, Inc., the sum of $6,000 in consideration of the Bank's lending money to Camp Dells. The second count alleged that on or about August 23, 1973, the defendant similarly received $6,000 from Eric H. Zellmer and William K. Pankow, again in consideration of the Algoma Bank's lending money to those individuals. The case was tried to a jury and the defendant was found guilty on both counts.

This case was prosecuted by personnel of the Wisconsin Department of Justice, which had earlier conducted a secret John Doe investigation pursuant to sec. 968.26, Stats.,[2] into the affairs of Recreation Interna-

[1] Sec. 221.40, Stats., provides:

"Any officer, director, agent or employe of any bank, or mutual savings bank, who shall for himself, directly or indirectly, take, accept or receive, or offer or agree to take, accept or receive, any commission, fee, compensation, or thing of value whatever, from any person in consideration of the bank, or mutual savings bank, of which he is such officer, director, agent or employe, loaning any money to, buying or discounting any note, bond, draft, or bill of exchange from, or accepting any draft for, or issuing any letter of credit to, such person, shall upon conviction thereof be imprisoned in the state prison not to exceed 2 years."

[2] Sec. 968.26, Stats., provides:

"If a person complains to a judge that he has reason to believe that a crime has been committed within his jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in such examination is within his discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but such counsel shall not be allowed to examine his client, cross-examine other witnesses or argue before the judge. If it appears probable from

tional, Inc., a Minnesota corporation, and numerous other businesses and individuals associated therewith.[3] Evidence of the crimes of which defendant O'Connor stands convicted was produced at the John Doe investigation, and the complaint against defendant was in part based upon that evidence. On its face the complaint reveals that the complainant, Special Agent Dale A. Laine of the Wisconsin Department of Justice, Division of Criminal Investigation, had been present at the John Doe investigation and had read portions of the transcript of testimony taken thereat. The John Doe investigation had been held in Dane county before the Hon. William F. Eich, County Judge, while the complaint against defendant was filed in Milwaukee county court and a warrant for his arrest was issued by a Milwaukee county court commissioner.

Before the trial the defendant was informed by the prosecutor that the State intended to introduce certain evidence of other conduct of the defendant similar to the crimes charged pursuant to sec. 904.04(2), Wisconsin Rules of Evidence. On the morning of October 31, 1975, the third day of the trial, the prosecutor informed defense counsel that additional evidence of this type would

the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23 [discovery and inspection], the record of such proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used."

[3] This John Doe proceeding was part of an ongoing investigation concerned with matters going well beyond the instant case. The Department of Justice had become involved at the request of the Wisconsin Commissioner of Securities and Commissioner of Banking as well as at the directive of the governor, issued pursuant to sec. 165.25, Stats.

be introduced through the testimony of Jeffrey DeGayner, who had only agreed to testify for the State the preceding evening. Defense motions seeking to prevent DeGayner from testifying and seeking a continuance on the ground of surprise were denied, and DeGayner was allowed to testify on November 3, 1975, following the weekend recess. The trial court had been provided with an affidavit of the prosecutor outlining the circumstances under which DeGayner had decided to testify at such a late date and with a copy of a signed statement given by DeGayner on October 31, 1975. DeGayner's statement related that O'Connor had been trying since July, 1975, to convince him either not to testify against O'Connor or to give a false explanation of the purpose of certain checks DeGayner had given to O'Connor. A copy of this statement, which also included the "other crimes" evidence which DeGayner would supply, was given to defense counsel as well as to the trial court on the morning of October 31, 1975.

The Algoma Bank failed subsequent to the crimes here involved. At the time of trial its affairs were in the hands of a liquidator acting for the Federal Deposit Insurance Company.

Defendant raises the following issues on this appeal:

1. Where a criminal complaint is based in part upon John Doe testimony, does the John Doe statute require that only the judge presiding over the John Doe investigation may determine whether the complaint shows probable cause?

2. Did the presence of a special agent of the Department of Justice at the John Doe proceeding or his access to the record thereof violate the secrecy provisions of the John Doe statute, sec. 968.26, Stats., and invalidate the complaint?

3. At the trial, did the court abuse its discretion in refusing to exclude the testimony of Jeffrey DeGayner

on grounds of surprise or, in the alternative, grant a continuance?

4. Was the evidence sufficient to support the verdict?

5. Did the trial court have erroneous information before it when it determined to impose restitution as a condition of probation?

## I.

The John Doe statute, sec. 968.26, Stats., provides in part:

"If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused."

Defendant contends that by force of this provision only Judge Eich was authorized to determine whether the complaint against him stated probable cause. "For all we know," he asserts, "Judge Eich may have determined there was no probable cause after hearing all the testimony." His conclusion is that the procedure employed in this case, by which the complaint was sworn before a Milwaukee court commissioner who thereafter issued a warrant for defendant's arrest, was invalid. We disagree.

The factual basis of the complaint herein consists in part of the complainant's recitation of the substance of evidence presented in the Dane county John Doe. However, a substantial part of the complainant's information appears to have come from other sources: interviews with witnesses and examination of records and documents of several types. The complaint was sworn before a court commissioner in Milwaukee county and a warrant for defendant's arrest was issued. Defendant does not dispute that the complaint stated probable cause to be-

lieve him guilty of the crimes charged. Nor does defendant dispute that the procedures followed in respect to this complaint were in full compliance with secs. 968.01– 968.04, Stats., which set forth the procedure for issuing complaints in criminal cases.

The cited provision of the John Doe statute does not require the conclusion defendant would draw. The statute directs that the complaint be reduced to writing and that a warrant be issued thereon if probable cause appears from the testimony. It does not specify that only the John Doe judge may perform these tasks. Clearly the John Doe judge may not issue a warrant upon a record that fails to show probable cause, but the statute does not state, either expressly or by reasonable implication, that if probable cause does not appear from the John Doe testimony no criminal action may ever be begun against an accused. If evidence adduced in the John Doe investigation together with information obtained by the authorities from other sources amounts to probable cause, we see no reason why a criminal action may not be initiated by means of a complaint filed with and a warrant issued by any judge or court commissioner having jurisdiction to act in the case. Even if it were true, as defendant hypothesizes, that Judge Eich did not believe probable cause had been shown in the John Doe, this fact alone would not bar charging the defendant with the crime.

The authority of judges and court commissioners to act upon criminal complaints appears in secs. 967.02(6), 968.03 and 968.04, Stats. It is suggested by the State that Judge Eich was in fact precluded from acting with respect to a complaint against this defendant because he is a county judge for Dane county and the offenses herein were not committed in that county. Sec. 968.02 (1), states, with an exception not here material, that

a complaint "shall be issued only by a district attorney of the county where the crime is alleged to have been committed." Sec. 968.04(1)(b) provides:

"A warrant or summons may be issued by a judge in another county when there is no available judge of the county in which the complaint is issued. The warrant shall be returnable before a judge in the county in which the offense alleged in the complaint was committed . . . ."

We find it unnecessary to decide here whether a valid warrant could have been issued by Judge Eich in this case. We hold only that the statutory jurisdiction of the Milwaukee county court commissioner who issued the warrant for defendant's arrest was not impaired by the fact that the complaint was based upon evidence adduced in a John Doe proceeding.

## II.

Defendant contends that Special Agent Laine's presence at the John Doe investigation was improper in that it was a violation of the secrecy which the statute permits the judge to invoke (and which the judge did invoke here) and that Laine's access to transcripts of John Doe testimony violated the related provision of sec. 968.26, Stats., limiting inspection of the record of such proceedings. We consider first the threshold question whether, assuming *arguendo* that violations of secrecy have occurred, there has been under the circumstances any wrong of which this defendant may be heard to complain. We answer this question in the negative.

A criminal complaint is defined by statute to be "a written statement of the essential facts constituting the offense charged." Sec. 968.01, Stats. The complaint must charge a crime under the law, must describe the conduct

alleged to constitute the offense, and must contain sufficient facts to persuade a neutral and detached magistrate that the charged crime has probably been committed by the accused. *State v. Williams,* 47 Wis.2d 242, 251, 177 N.W.2d 611 (1970) ; *State v. Haugen,* 52 Wis.2d 791, 191 N.W.2d 12 (1971) ; *State ex rel. Cullen v. Ceci,* 45 Wis.2d 432, 173 N.W.2d 175 (1970). It is not contended that the complaint in the instant case is defective in any of these respects. Nor does defendant claim either the state or the John Doe judge violated his constitutional rights or otherwise acted unlawfully in obtaining the evidence later set forth in the complaint against him. Defendant has not suggested that Agent Laine's presence in the John Doe proceeding or his access to the record were motivated by bad faith or were prejudicial to the defense in any manner whatsoever.

This court has stated that secrecy in a John Doe proceeding is a privilege of the witness. *State ex rel. Kowaleski v. District Court,* 254 Wis. 363, 370, 36 N.W. 2d 419 (1949). *Kowaleski* was modified in *State ex rel. Jackson v. Coffey,* 18 Wis.2d 529, 546, 118 N.W.2d 939 (1963), to the extent of recognizing that the State also has a legitimate interest in the maintenance of secrecy for a reasonable time. However, it has never been recognized by this court that a person charged with crime on the basis of information obtained in a John Doe proceeding has an interest in the maintenance of secrecy in that proceeding.

The case of *State v. Krause,* 260 Wis. 313, 50 N.W.2d 439 (1951), is instructive here. It was there claimed that the defendant was entitled to a mistrial because the grand jury which had indicted him had failed to maintain the secrecy of its proceedings. Among the breaches complained of were publications in newspapers of statements made by the jury foreman and the special prosecutor,

disclosure by witnesses to newsmen of the substance of their testimony, and the unauthorized presence in the grand jury room of two special investigators. This court observed that the injunction of secrecy as to grand jury proceedings is for the benefit of the jurors and the public, not the one who is indicted by the jury, and quoted with approval the following, from *State v. Bates,* 148 Ind. 610, 612, 48 N.E. 2 (1897) :

"Though obviously proper, and highly important, that the proceedings of a grand jury should be in secret, one who is indicted cannot take advantage of it if they are not. . . . The secrecy is not required for his benefit,— but otherwise."

With respect to the presence of the special investigators in the jury room, the court noted that they had not been present during the jury's deliberations, and adopted the rule, followed in a majority of jurisdictions, that presence of unauthorized persons in the grand jury room, provided it does not occur at a time when the jury is deliberating or voting on the indictment, is not grounds for quashing an indictment unless prejudice to the accused is shown.

We think the position taken in the *Krause Case* is appropriate here. There has been no suggestion of bad faith on the part of the State, nor any indication that Agent Laine's presence at the John Doe, or his reading of the transcripts thereof, affected the defendant's rights in any way. There is no claim that Agent Laine used the information he obtained from the John Doe in a manner that prejudiced the defense. Under the circumstances, even if the acts of which defendant complains were improper under the statute, the defendant has no ground to complain on this appeal.

In view of this conclusion, further consideration of defendant's claims regarding the John Doe is not neces-

sary. However, since the questions raised are likely to recur, we believe additional comment appropriate. At issue are the interpretation and effect of the following provisions of sec. 968.26, Stats., both of which first appeared in the statute in 1949:[4]

"The examination . . . may be secret."

"Subject to s. 971.23, the record of such proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the trial of the accused and then only to the extent that it is so used."

The first provision authorizes the judge, by order, to impose secrecy upon the proceedings themselves. The public is excluded from the proceeding, and the witnesses

[4] Ch. 631, sec. 33, Laws of 1949, created sec. 354.025, Stats. 1949, the substantially identical (for present purposes) predecessor of sec. 968.26. As part of a general revision of criminal procedure, sec. 354.025, Stats. 1949, codified for the first time the existing John Doe procedure developed by the courts pursuant to sec. 4776, Rev. Stats. 1898 (later renumbered to sec. 361.02, Stats. 1925). Sec. 4776, Rev. Stats. 1898, was not intended to create a primarily investigative proceeding. Rather, it set forth the procedure governing the determination of probable cause for the issuance of warrants generally, a function served after the 1949 revision by sec. 354.02, Stats. 1949, and presently by secs. 968.02–.04, Stats. See State v. Davie, 62 Wis. 305, 22 N.W. 411 (1885). From a relatively early date, however, the jurisdiction conferred upon magistrates by sec. 4776, Rev. Stats. 1898, was adapted to serve a broader investigatory purpose. See State ex rel. Long v. Keyes, 75 Wis. 288, 44 N.W. 13 (1889). The 1949 legislation gave the investigatory proceeding a statutory basis separate from proceedings for issuance of warrants generally. For the legislative history of sec. 354.025, Stats. 1949, see Comments of the Advisory Committee on Rules of Pleading, Practice and Procedure, 1950 Wisconsin Annotations, at 1550; Platz, The 1949 Revision to the Wisconsin Code of Criminal Procedure, 1950 Wis. L. Rev. 28, 41, 42.

and others present may be admonished not to disclose the questions asked, the answers given, or other matters observed or heard in the secret session.[5] This court has held that a reasonable requirement of secrecy does not violate the constitutional rights of a witness. *State ex rel. Jackson v. Coffey, supra,* 18 Wis.2d, at 545, 546. This court has set forth the following reasons justifying secrecy in a John Doe proceeding:

1. To keep from an unarrested defendant the knowledge which would suggest escape;

2. To prevent defendants from collecting perjured testimony for the trial;

3. To prevent those interested in thwarting the inquiry from tampering with prospective testimony or secreting evidence.

4. To render witnesses more free in their disclosures.

5. To prevent testimony which may be mistaken or untrue or irrelevant from becoming public.

*State ex rel. Jackson v. Coffey, supra,* 18 Wis.2d at 546; *State ex rel. Distenfeld v. Neelen,* 255 Wis. 214, 218, 38 N.W.2d 703 (1949).

The second provision of sec. 968.26, Stats., set forth above relates to disclosure of the transcript of John Doe testimony and other matters in the record. Where secrecy has been imposed on the proceedings by order of the judge, this second provision complements the secrecy order and serves the same ends. However, the statute limits inspection whether secrecy is ordered or not, and its effect is not limited as to time. The legislative history of sec. 968.26 indicates that the primary purpose of the provision specifically limiting inspection of the record is to prevent public access to John Doe records at any time, and to preclude criminal defendants from asserting

---

[5] *See* Wisconsin Jury Instruction—Criminal, Special Materials, SM-12.

a right to discovery of John Doe testimony except as provided in the statute.[6] The limit upon inspection is expressly made "subject to s. 971.23 . . . ," the statute governing discovery in criminal cases.[7]

In the present case, Special Agent Laine was permitted to attend the John Doe by an order of the judge specif-

---

[6] *See* Platz, Note 4, *supra.* The provision limiting inspection of the record was intended to incorporate into the statute the holding of *State v. Herman,* 219 Wis. 267, 262 N.W. 718 (1935), in which this court upheld an order of the trial court denying a pretrial motion, brought by a defendant charged with crime following a John Doe investigation, seeking to compel the district attorney to permit defense counsel "and any other persons, citizens of this state, to make an efficient study" of the John Doe transcript. William A. Platz was a member of the Advisory Committee on Rules of Pleading, Practice and Procedure, which drafted the 1949 legislation in which the subject provision first appeared. This court has recognized that a contemporaneous law review article by a sponsor or drafter of legislation may properly be examined on questions of legislative intent. *Wisconsin Valley Imp. Co. v. PSC,* 7 Wis.2d 120, 125, 95 N.W.2d 767 (1959); *Motor Transp. Co. v. PSC,* 263 Wis. 31, 47, 48, 56 N.W.2d 548 (1953).

[7] The reference to sec. 971.23, Stats. in sec. 968.26 was added by ch. 255, Laws of 1969, which, as part of another general revision of criminal procedure, created for the first time in Wisconsin discovery of right in criminal cases. Secs. 971.23–.25, Stats. This court has observed that there is no general right to discovery in criminal cases except as provided by statute. *State v. Miller,* 35 Wis.2d 454, 474, 478, 151 N.W.2d 157 (1967). Discovery is of course distinct from constitutionally mandated disclosure of exculpatory evidence. *See Britton v. State,* 44 Wis.2d 109, 117, 118, 170 N.W.2d 785 (1969).

In *Myers v. State,* 60 Wis.2d 248, 266, 208 N.W.2d 311 (1973), we stated that the policy behind the statutory limit on inspection of the record "is designed to preclude a defendant from opening up the entire John Doe once the prosecutor uses it as to one witness or one offense." In *Myers* we held, however, that notwithstanding the statute, defendants have a due process right to the use of John Doe testimony for purposes of impeaching a prosecution witness at trial, regardless of whether such testimony has been used by the prosecution.

ically naming him, entered on motion of one of the assistant attorneys general participating in the proceeding. Nothing in the words of sec. 968.26, Stats., forbids the entry of such an order, nor, under the circumstances, do we see any impairment to the considerations justifying secrecy discussed above. On the other hand, there may be instances where the presence of an officer familiar with the case would materially aid the progress of the investigation, especially where, as here, the matters under investigation are complex.

The policy underlying secrecy is directed to promoting effectiveness of the investigation by preventing the proceedings from becoming public knowledge, rather than to concealing information obtained in the proceedings from law enforcement officials. With the exception of matters disclosed in the complaint against this defendant, there is no suggestion here that Agent Laine revealed what transpired in the John Doe to anyone. It cannot be said that publication of John Doe testimony in a complaint was improper; the statute quite obviously contemplates that complaints will be issued on the basis of evidence presented before the judge.

If an attorney for the state requests the presence and assistance of another public official with law enforcement responsibilities, we hold it is within the discretion of the John Doe judge to grant such request.[8] It is of

---

[8] We are aware that the presence of a police officer in a grand jury room would normally be considered improper, the persons who may properly attend being limited as a rule to the jurors, a witness, the prosecutor, and a stenographer. *See State v. Krause,* 260 Wis. 313, 50 N.W.2d 439 (1951); Annot. *Presence in Grand Jury Room of Person Other Than Grand Juror as Affecting Indictment,* 4 A.L.R.2d 392 (1949); 1 Wharton's *Criminal Procedure,* sec. 218 (12th ed. 1974). However, the purpose of this rule is to protect the integrity of the grand jury process by avoiding

course the responsibility of the judge to see to it that the practice here approved is not abused. Unless the judge is persuaded that the officer will make a material contribution to the investigation, his or her presence should not be allowed. An officer attending the proceedings does so subject to the authority of the judge; in particular, that officer is subject to the order of secrecy. If it is brought to the attention of the judge that the secrecy of the proceeding is threatened, the judge has a clear duty to inquire into the matter and take such steps as may be appropriate.[9]

Considerations relating to the presence of a law enforcement officer in a John Doe proceeding also are relevant as to the propriety of Agent Laine's examination of the transcript thereof. Sec. 968.26, Stats., clearly contemplates that the district attorney has the authority to inspect the John Doe record, and it is undisputed here that the attorney general, his deputy and his assistants possess the same authority when acting in a case pursuant to the governor's request.[10] The defendant takes

the presence of persons who might attempt to influence the result of the grand jury's deliberations. This consideration has little force in the context of a John Doe proceeding conducted by a judge.

[9] In *State ex rel. Niedziejko v. Coffey*, 22 Wis.2d 392, 126 N.W.2d 96 (1964), we held that it was an abuse of the judge's discretion to reveal or threaten to reveal John Doe testimony of a police officer to his superiors in the department, in violation of the order of secrecy imposed by the judge himself, for the purpose of threatening the officer's employment as punishment for his invocation of the Fifth Amendment in violation of police department rules. It goes without saying that what a judge could not do herself or himself may not be done by another person who has been admitted to the proceedings. Nor would it have been proper under the somewhat unusual circumstances present in *Niedziejko* for the judge to have reached the forbidden result by admitting the superiors of the police officer to the John Doe proceeding.

[10] *See* sec. 165.08, Stats.; *State ex rel. Jackson v. Coffey, supra,* 18 Wis.2d, at 537–539.

the position that the statute should be strictly construed, such that inspection may be made only by the named individuals personally. The state urges a more liberal construction which would allow delegation of the authority to inspect to law enforcement personnel such as Agent Laine.

Secrecy of John Doe proceedings and the records thereof is not maintained for its own sake. The reason and policy of secrecy generally and of the statutory provision here involved were discussed above. To allow law enforcement personnel limited access to the transcript of a John Doe proceeding is no more inconsistent with the purposes of secrecy than to allow such personnel to be present at the proceeding in the first instance. Nor is there a conflict with the purpose underlying the specific statutory limit on inspection of the record. As noted above, that provision was designed to effectuate the legislative determination that John Doe records, whether resulting from secret proceedings or otherwise, are not to be treated as public records generally, and are subject to discovery of right by defendants only as provided in the statute.

In the context of the federal grand jury, we note that a provision of Rule 6 (d), Federal Rules of Criminal Procedure, permitting disclosure of matters occurring before a grand jury "to the attorneys for the government for use in the performance of their duties," has been construed to allow disclosure to agents other than attorneys under proper circumstances.[11] However, the federal courts have recognized that uncontrolled dissemination of such materials presents possibilities for abuse and

[11] *United States v. Evans*, 526 F.2d 701, 707 (5th Cir. 1976); *United States v. Hoffa*, 349 F.2d 20, 43 (6th Cir. 1965), *aff'd* 385 U.S. 293 (1966); *In re July, 1973 Grand Jury*, 374 F. Supp. 1334 (N. D. Ill. 1973).

accordingly have placed limits on the circumstances when disclosure may be made. The matter was put as follows in *United States v. Universal Manufacturing Co.*, 525 F.2d 808, 812 (8th Cir. 1975) :

"[W]here such access is necessary to or promotes the success of the grand jury's investigation, and where the access to and use of the materials in question are properly restricted and supervised, a federal court may authorize government investigators who are involved in the matter which the grand jury is pursuing to have access to documents and other evidentiary matter subpoenaed by or presented to a federal grand jury."

We think a similar rule is appropriate with respect to testimony or other evidence presented in a John Doe proceeding. The final responsibility for the proper conduct of such proceedings rests with the presiding judge, whose obligation it is to ensure that the considerable powers at his or her disposal are at all times exercised with due regard for the rights of the witnesses, the public, and those whose activities may be subject to investigation. Access to a John Doe record by persons other than the attorney for the state is improper without prior approval of the judge, on the record, indicating persons as to whom access is permissible and stating the purposes for which access is to be had. Once an appropriate order is entered, however, the attorney for the state may, consistent with the order, permit the persons named to inspect the record under his or her supervision to the extent necessary for the performance of their duties.

Access to the record by persons other than the attorney or attorneys acting for the state should, like access to the proceeding itself, be the exception, not the rule. An order authorizing such access should not be granted except upon a demonstration, which need not

be elaborate but which must be more than the recitation of a conclusion, that access will be of material aid to the progress of the investigation.[12]  With respect to both the judge in granting the order and the attorney for the state in implementing it, the guiding principle should be that access to materials in the record be limited to the minimum reasonably consistent with the purposes for which access is to be allowed.  Of course, one who has been permitted access to a transcript or other material in a John Doe record may no more publicize or otherwise misuse information contained therein than may a person authorized to be present at the proceeding.

In the case at bar the order of secrecy issued by Judge Eich when the John Doe was initiated provided that the record and testimony should not be open to inspection "by anyone except the Attorney General of Wisconsin and law enforcement personnel of his Wisconsin Department of Justice . . . ." We are of the opinion that this order was too broad in its delineation of the class authorized to inspect and in its failure to set forth the purposes for which inspection was authorized.  While the specificity possible in these respects may vary with the circum-

[12] In *United States v. Universal Mfg. Co.*, 525 F.2d 808 (8th Cir. 1975), it was found reasonable to permit inspection of grand jury material by investigative personnel of the Federal Bureau of Investigation where the evidence consisted of some 10,000 sales invoices and a large number of documents relating to stock transfers.  The court recognized that it would be unrealistic to expect the United States Attorney and his staff to deal with this evidence in undigested form.  It would be inappropriate to attempt here an exhaustive enumeration of the circumstances in which access might properly be permitted; the matter must rest with the discretion of the judge, acting upon an evaluation of the needs and circumstances of the case.  A need for processing of voluminous data would be a factor, as would the desirability of bringing special knowledge or expertise to bear in evaluating the evidence, and doubtless other considerations as well.

stances, the order should be drawn as narrowly as is reasonably commensurate with its purposes. It may be amended if subsequent developments require. Moreover, insofar as appears from the record before us, which is incomplete as to the John Doe, no showing was attempted nor finding made with respect to the justification for access or the purposes for which it was allowed. The record should reflect that these matters were considered by the judge; an unsupported and unexplained request by the attorney for the state is not enough. Additionally, we consider it desirable that the supervisory responsibilities of the attorney for the state be reflected in the order entered in the record by the judge.

The practice here employed fell short of the standards announced in this opinion. However, there is nothing to suggest that overly broad access to the record occurred in fact, or that Agent Laine misused the information obtained from his examination of transcripts in the record. It does not appear that defendant O'Connor was in any way affected by the procedure employed by Judge Eich. This being so, whatever shortcomings there were can give him no grounds to complain.

### III.

It is contended that the defense was surprised by the testimony of Jeffrey DeGayner, that inadequate time was available to prepare to meet his testimony, and that as a result the trial court should have excluded this evidence or in the alternative granted a continuance.

DeGayner's evidence did not relate to the specific illegal acts with which defendant was charged, but rather related to similar instances of conduct in which the defendant required of DeGayner and accepted from him sums of money in consideration of the Algoma Bank's loaning money to DeGayner. This evidence was admitted

under the rationale of sec. 904.04, Wis. Rules of Evidence, and the decision of this court in *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. denied* 390 U.S. 959 (1968), to prove that the defendant knew and understood that payments from Camp Dells, Zellmer and Pankow were received in consideration of the bank's lending money to those parties. Apart from the question of surprise, the defendant does not here dispute that DeGayner's evidence was admissible on the stated ground. DeGayner also testified to four conversations he had with the defendant between July 15, 1975, and October 23, 1975 (six days before the trial began), in which the defendant urged DeGayner to "hang tough" in certain negotiations between DeGayner and the Wisconsin Department of Justice respecting the possibility of his entering into some type of bargain with the state in exchange for his testimony. In these conversations defendant also suggested that DeGayner should falsely characterize his payments to defendant as repayments of loans made by the defendant to DeGayner. The admissibility of this portion of DeGayner's testimony is also undisputed on appeal except for the alleged unfair surprise. *Scott v. State,* 211 Wis. 548, 556, 557, 248 N.W. 473 (1933). DeGayner's testimony was given pursuant to a promise of immunity by the state, and the jury was so informed.

The power of a court to exclude relevant evidence based upon consideration of other values is expressed in sec. 904.03, Wis. Rules of Evidence:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Surprise is not listed as a specific ground for exclusion of evidence. This court has recognized that a continuance will generally be a more appropriate remedy for surprise

than exclusion. *Fredrickson v. Louisville Ladder Co.,* 52 Wis.2d 776, 784, 191 N.W.2d 193 (1971). *See also* the Judicial Council Committee's and the Federal Advisory Committee's Notes pertaining to sec. 904.03, 59 Wis.2d at R73–R75. It is there noted, however, that where surprise would require an unduly long continuance, exclusion of testimony may be justified.

The granting of a continuance is a matter resting in the discretion of the trial court, and its decision will not be disturbed on appeal unless that discretion has been abused. *State v. Davis,* 66 Wis.2d 636, 655, 225 N.W.2d 505 (1975) ; *State v. White,* 53 Wis.2d 549, 554, 193 N.W.2d 36 (1972).

It is undisputed that the defense was not specifically informed that DeGayner would testify until the morning of October 31, 1975, the third day of the trial. However, the record contains a letter from the prosecutor to defense counsel dated October 13, 1975, in which counsel was informed that evidence of other crimes would be offered pursuant to sec. 904.04(2), Wis. Rules of Evidence. By letter delivered October 27, 1975, and phone call of October 28, 1975, defense counsel was informed that another witness to "other crimes" evidence might be called and that counsel would be informed immediately if it were determined that this witness would testify. The state had been negotiating with this witness, who was DeGayner, since August of 1975, in the hope of obtaining his testimony against the defendant. However, these negotiations broke down, and it was not until October 30, 1975, that the state learned that he would in fact testify. A statement was taken from him between the hours of 5:25 p.m. and 11:40 p.m. on that date. At 7:30 a.m. on October 31, 1975, defense counsel was informed of the contents of this sworn statement, which was essentially the same as the testimony DeGayner gave

at trial, and a copy of the statement was given to defense counsel when the prosecutor arrived in court later that morning. Defense counsel indicated on the record that he knew the state had been negotiating with DeGayner, but stated that he had not connected DeGayner with the particular trial here involved.

No testimony was taken on October 31, 1975, the day apparently having been devoted to unreported argument regarding whether DeGayner's testimony would be permitted. The matter was further argued on November 3rd, following a weekend recess, defense counsel asserting that preparing to cross examine DeGayner would require sixty days and contact with at least 13 persons. To the extent discernible from the record, it appears that the enquiries defense counsel wished to make did not relate to matters in DeGayner's testimony, but to other activities, such as possible irregularities being uncovered in bankruptcy proceedings then pending with respect to a corporation run by DeGayner. Insofar as appears in the record, counsel's interest in these matters was primarily for their value in impeaching DeGayner's credibility. The court concluded that DeGayner's testimony would be admitted, apparently on the grounds of the state's need therefor, the defendant's knowledge that DeGayner was talking to the state and might become a witness, and the fact that the defense had had the weekend recess to prepare. Defense counsel conducted an extensive and able cross-examination of DeGayner, in which he demonstrated considerable knowledge of DeGayner's prior activities.

On this record it cannot be said that the trial court's refusal to grant defendant a continuance was an abuse of discretion. Defendant and his counsel were aware well before trial that DeGayner was negotiating with the state and might testify on its behalf. Counsel was given

complete access to the state's voluminous files before trial, including a file on DeGayner. Defendant actively sought to persuade DeGayner not to testify, or to do so falsely, and it appears that until October 30, 1975, he was successful in the former regard. There is no indication that the state's conduct was in any way improper or not in good faith; defense counsel was informed that DeGayner would testify and given a copy of his statement promptly upon this information becoming available. Defendant's conduct, however, was not in good faith. It would be anomalous indeed if a defendant who appears to have labored to prevent certain testimony from being given could then demand a continuance because his efforts were partially but not wholly successful.

As noted, insofar as appears from the record, defense counsel's stated desire to contact other witnesses and obtain access to the files in the bankruptcy proceeding involving DeGayner was for the purpose of impeaching DeGayner on subsidiary matters. Defendant claimed that he required sixty days to prepare to meet DeGayner's testimony. However, on the record before it the trial court could properly have concluded that this request was unreasonable and not a good faith statement of the time actually needed. Under the circumstances, the trial court did not abuse its discretion in refusing to grant the defendant more than the two-day weekend that he had.

## IV.

The trial court instructed the jury that before it could find defendant guilty of the offense charged in Count I of the information it must be satisfied beyond a reasonable doubt that there were present the following four elements:

1. That the defendant was the president of the Algoma Bank on November 1, 1972.

2. That the Algoma Bank granted a loan to Camp Dells, Inc.

3. That the defendant directly or indirectly received a thing of value from Camp Dells, Inc.

4. That such thing of value was received by the defendant in consideration of the Algoma Bank granting a loan to Camp Dells, Inc. The trial court, defined the phrase "in consideration of" to mean "that the state must prove that the defendant had knowledge and understanding that the thing of value alleged to have been received by him was a direct result of a loan being granted by the Algoma Bank to Camp Dells, Inc." The same instruction was repeated, with appropriate changes, as to Count II.

Defendant's challenge to the sufficiency of the evidence relates to the fourth element, consideration. However, it appears that he has misconstrued the statute. He argues that the evidence is defective in failing to show "that the Algoma Bank did anything in consideration" of the payments made to the defendant. The statute does not require that the bank granted a loan "in consideration of" the payment received by the defendant. It requires that the defendant received the payment, for himself, "in consideration of" the bank's granting a loan. The two are not the same. As to bribery,[13] it is settled that once receipt of the bribe is shown it is not necessary to prove that the recipient's conduct was actually influenced by the illicit payment. *State v. Sawyer*, 266 Wis. 494, 500, 63 N.W.2d 749 (1954), *cert. denied* 348 U.S.

[13] In *State ex rel. Shinners v. Grossman*, 213 Wis. 135, 138, 250 N.W. 832 (1933), this court said of sec. 221.40, Stats.: "In terse language it makes criminal the receiving of bribes on the part of bank officials."

855, *reh. denied* 348 U.S. 890; *Dunn v. State,* 125 Wis. 181, 197, 102 N.W. 935 (1905). To sustain a conviction under sec. 221.40, Stats., it is not necessary to show that the conduct of either the defendant or the bank was influenced by the unlawful transaction. It would not affect this defendant's guilt if it turned out that the loans to Camp Dells, Zellmer and Pankow were granted by decision of other officers of the bank, without defendant's participation and for wholly legitimate reasons.

With respect to the first count of the information, the evidence included the following:

Roger Kane testified that on or about November 1, 1972, while he was president of Camp Dells, Inc., he attended a meeting of the executive board of Camp Dells. Defendant was present at this meeting, the purpose of which was to set up a $200,000 loan. Toward the end of the meeting defendant O'Connor stated that there should be three points involved and that Kane should make out a check. Three points converted to $6,000 on a $200,000 loan. Kane made out and signed a check in this amount drawn on Camp Dells' bank account and delivered it to the defendant. Kane testified that the check represented the three points on the loan, over and above the interest, and was made out payable to the defendant on his instructions. Defendant received the check and deposited it in his account in a Florida bank. The loan was subsequently granted to Camp Dells by the Algoma Bank.

As to the loan involved in Count II of the information, the testimony of John Stone showed that he assisted Verlyn Adamson, an accountant, in arranging a loan for Erich Zellmer and William Pankow, who were apparently associated in certain business ventures, and who were clients of Adamson. Stone put Adamson in touch with the defendant, and Stone talked with O'Connor during August of 1973 regarding the loan. O'Connor instructed Stone that there was to be a 5 percent discount

fee in addition to interest, direct fees and discounts charged by the bank. O'Connor instructed Stone that the 5 percent, which amounted to $9,000 on this loan, was to be paid in cash. Stone transmitted O'Connor's instructions to Adamson who gave Stone $9,000 cash. Stone flew from Madison to Milwaukee with the money in a private aircraft, met the defendant at the airfield, and negotiated with him as to how the money was to be divided between them. It was decided that the defendant's share was $6,000, and Stone then gave this amount of cash to the defendant.

Verlyn Adamson testified that in response to a telephone call from John Stone he obtained $9,000 in cash and delivered it to Stone. Adamson was repaid by a personal check of Erich Zellmer in the amount of $9,000. Zellmer testified that he wrote a check for $9,000 to Adamson and that this was for a discount of 5 percent on loans from the Algoma Bank to Pankow and himself, in addition to a 10 percent discount paid to the bank itself. The loans to Pankow and Zellmer were thereafter made by the Algoma Bank.

The foregoing evidence is sufficient to sustain the verdict. In *Jacobs v. State,* 50 Wis.2d 361, 366, 184 N.W. 2d 113 (1971), this court said:

"The state of mind or intent may reasonably be ascertained from the acts and conduct of a defendant, and the inferences fairly deducible from the circumstances."

The jury could properly have inferred from the evidence that the defendant took for himself the money paid to him with the knowledge and understanding that it was received as illicit consideration for the Algoma Bank, of which he was then president, making loans to those from whom the money was received. The jury having drawn its inferences and there being credible evidence upon which it could do so, the obligation of this court

is to sustain the verdict on appeal. *Baldwin v. State,* 59 Wis.2d 116, 121, 207 N.W.2d 630 (1973).

## V.

Sec. 973.09 (1), Stats., provides in part:

"When a person is convicted of a crime, the court may, by order, withhold sentence or impose sentence and stay its execution, and in either case place him on probation to the department for a stated period . . . and may impose any conditions which appear to be reasonable and appropriate."

Imposition of restitution in a proper case is authorized by this provision of the statutes. *State v. Gerard,* 57 Wis.2d 611, 618, 619, 205 N.W.2d 374 (1973), *appeal dismissed* 414 U.S. 804. The propriety of imposing restitution in the case at bar is not here in issue. Nor does defendant claim that the trial court abused its discretion on the facts then before it, or ask this court to review and modify the conditions imposed. The contention is that the trial court had incorrect information before it when it ordered restitution as a condition of defendant's probation, and that this court should remand the question of restitution for a redetermination by the trial court.

When the defendant was brought before the trial court for sentencing on December 5, 1975, the prosecutor informed the court that to his knowledge the Algoma Bank had sold the $200,000 note of Camp Dells, Inc., to another bank, but that the FDIC liquidator still held the Zellmer and Pankow notes and that the Zellmer note was about $50,000 in arrears. The trial court withheld sentence on both counts, placed the defendant on concurrent three year terms of probation, and as conditions of probation required that the first ninety days be spent in the county jail and that the defendant make restitution to the FDIC liquidator for losses suffered as a result

of the loans involved in Count II—*i.e.*, the Zellmer-Pankow loans. The court indicated that the defendant should make restitution only to the extent that payment by Zellmer and Pankow was not made.

It is clear from the record that the trial court relied on the fact that the amount of restitution would not exceed approximately $50,000. However, no amount was actually fixed by the court, and the written Judgment of Conviction merely provided:

"Restitution: as to Count No. 2 Restitution to the F.D.I.C. liquidator of the Algoma State Bank."

The record contains a letter from the prosecutor to the judge dated December 10, 1975, five days after probation was imposed, in which the judge was informed that in fact both the Zellmer and Pankow notes were outstanding, with a combined balance due for principal and interest of $175,842.20, as of December 8, 1975. This information was also communicated to the defendant. However, no steps were taken in the trial court to alter the conditions of probation or to fix the amount of restitution for which the defendant is responsible.

The authority of the trial court to alter conditions of probation is set forth in sec. 973.09(3), Stats.:

"Prior to the expiration of any probation period, the court may for cause by order extend probation for a stated period or modify the terms and conditions thereof."

Under this statute the trial court possesses a continuing jurisdiction to modify the conditions of probation for cause. In *State v. Gerard, supra,* 57 Wis.2d at 625, we indicated that the " 'cause' contemplated by the statute includes impossibility, undue hardship and probably other causes." In the instant case the trial court relied

upon information later shown to be erroneous, with the result that the condition imposed is substantially more burdensome to the defendant than originally contemplated. This fact constitutes such cause under the statute as should prompt the trial court, at such time as the defendant so moves, to reexamine its earlier action in the light of the facts as they now appear. The trial court may then enter such order modifying defendant's obligation to make restitution as it determines is appropriate.[14]

There is no need for this court to remand the matter of restitution to the trial court, as defendant requests. The authority to modify conditions of probation is specifically conferred by sec. 973.09(3), Stats., and may be exercised for cause shown at any time before the period of probation expires.

*By the Court.*—Judgment and order affirmed.

---

[14] At such time as this matter comes before the trial court, consideration should be given to this court's decision in *State v. Scherr*, 9 Wis.2d 418, 425, 101 N.W.2d 77 (1960). The defendant has a right to an order of restitution establishing with certainty the extent and manner of discharge of his liability.