HEIDI L. HABEL, Corporation Counsel Monroe County
You have requested my opinion on several issues relating to the responsibility of a sheriff in the provision of medical care for indigent arrestees and prisoners.
Paraphrasing your first question, you ask:
 1) Can a sheriff refuse to book an arrestee brought to the county jail by another police agency until the arrestee undergoes a medical examination? Can the sheriff require the arresting agency to transport the arrestee to such examination and to pay the cost for it?
You indicate that Wisconsin sheriffs have had longstanding policies of refusing to accept arrestees in their county jails if they have blood alcohol concentrations above certain limits, until the arrestees have been given medical clearance. You also indicate that, at least in Monroe County, the sheriff has required the arresting agency to transport the arrestee to the medical examination and to pay for such examination. You ask if this procedure is proper.
For the reasons that follow, it is my opinion that a sheriff may not refuse to book a person lawfully arrested and brought to the county jail by any state law enforcement agency, regardless of the medical condition of the arrestee. I also conclude that a sheriff may require immediate medical screening of such "prisoner," with the cost of transporting and screening the prisoner to be apportioned according to section 53.38, Stats.
As you note, a person who has been arrested, but not yet booked into the county jail, is not a "prisoner" within the meaning of *Page 250 
section 53.38, which governs medical care of "prisoners." LaCrosse Lutheran Hospital v. La Crosse County, 133 Wis.2d 335,338, 395 N.W.2d 612 (Ct.App. 1986); see also 67 Op. Att'y Gen. 245 (1978). Thus, a sheriff's responsibility to provide appropriate medical or hospital care to a "prisoner" under section 53.38 does not arise until an arrestee is booked into the county jail. You ask, therefore, whether a sheriff can avoid the operation of section 53.38 and hold the arresting agency responsible for the cost of intake medical screening by refusing to book certain arrestees until such screening is accomplished.
I find no clear statutory answer to the question of a sheriff's authority to refuse to book arrestees into the county jail until they undergo medical screening. Section 59.23(1) requires a sheriff to "[t]ake the charge and custody of the jail maintained by his county and the persons therein, and keep them himself or by his deputy or jailer." That section, however, does not expressly authorize a sheriff to decide who will and will not be accepted for booking.
Reading section 59.23(1) in conjunction with section 53.31, governing use of jails, and with the case law, commentary and opinions of my predecessors that touch upon this question, I conclude that a sheriff may not refuse to book a person lawfully arrested and brought to the county jail by any state law enforcement agency, regardless of the apparent medical status of the arrestee.
Section 53.31 provides that a county jail "may be used for the detention of persons charged with crime and committed for trial; . . . and for other detentions authorized by law." It does not restrict use of the jail to detention of arrestees who are sober and healthy, nor does it bar particular law enforcement agencies from presenting arrestees for booking.
In Grab v. Lucas, 156 Wis. 504, 506-07, 146 N.W. 504 (1914), the Wisconsin Supreme Court intimates that a sheriff's historical role as keeper of the jail does not include discretion to set an admissions policy. The court states:
 Officers having persons under arrest in their custody may lawfully place them for safe-keeping in any proper and suitable place such as a city or county jail, otherwise they could not be safely kept. While the primary function of a jail is a place of detention for persons committed thereto under sentence of a court, they are also the proper and usual places where persons *Page 251 
under arrest or awaiting trial are kept till they appear in court and the charge against them is disposed of.
Although I find no Wisconsin decision amplifying upon this statement, I note that a federal court, construing Wisconsin law in dicta, has rendered its opinion that a sheriff would be liable for criminal contempt for "refusal to accept custody of prisoners." Kish v. County of Milwaukee, 441 F.2d 901, 905 (7th Cir. 1971). At least one court elsewhere and one commentator also have reached this conclusion. See Griffin v. Chatham County244 Ga. 628, 261 S.E.2d 570, 571 (1979), and Murfree, A Treatise onthe Law of Sheriffs and Other Ministerial Officers, 614 (1890) ("[a constable] may arrest for a breach of the peace, committed in his presence, and lodge the offender in jail, and the jailer is bound to receive such a prisoner").
Additionally, in three separate opinions, my predecessors have concluded that, because the power of arrest would be meaningless without the power to imprison, a sheriff is obliged to receive persons arrested by city police, 39 Op. Att'y Gen. 50, 52 (1950), game wardens, 39 Op. Att'y Gen. 132, 133 (1950), and University of Wisconsin police, 43 Op. Att'y Gen. 141, 142-43 (1954).
Finally, indirect support for the conclusion that a sheriff must book all lawfully arrested persons may be found in section 53.38, which provides:
 Medical care of prisoners. If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol the sheriff or other keeper of the jail shall provide appropriate care or treatment and may transfer him to a hospital or to an approved treatment facility under s. 51.45(2)(b) and (c), making provision for the security of the prisoner. The costs of medical and hospital care outside of the jail shall (if the prisoner is unable to pay for it) in the case of persons held under the state criminal laws or for contempt of court, be borne by the county and in the case of persons held under municipal ordinance by the municipality. The governmental unit paying such costs of medical or hospital care may collect the value of the same from him or his estate as provided for in s. 49.08.
The highlighted language in this section was added by chapter 198, Laws of 1973. Its separate addition reasonably suggests that a sheriff's power to provide care for intoxicated or alcoholic persons was not previously clear. It also reasonably suggests, however, that *Page 252 
the Legislature intended that a sheriff accept custody of such persons when presented for booking, because intoxicants within the jail are prohibited. Sec. 53.37(2), Stats.
Once an arrestee becomes a "prisoner," the cost of his medical care is governed by section 53.38 cited above. Thus, if a prisoner "is unable to pay for it," the municipality would be liable for the cost of a medical screening and transportation to that screening only if a prisoner is held for violation of a municipal ordinance. The county would be responsible for such costs if the prisoner is held for a violation of state criminal law. In either case, the governmental unit paying such costs may be able to recoup them from the indigent prisoner or his estate, pursuant to section 49.08.
If an arrestee were taken to a medical facility for screening before being booked into jail, and if he were unable to pay for such screening, the cost would be governed by section 49.02(5) of the public assistance laws. In that case, the prisoner's county of legal residence would be liable under section 49.02(5)(ar), subject to the application of section 49.08. See 67 Op. Att'y Gen. 245, 247 (1978).
Which agency physically must transport a prisoner who is deemed to need immediate medical screening would seem to be a matter of comity between the arresting agency and the sheriff under the exigencies of the particular case. Pursuant to section 59.23(4), the sheriff would be ultimately responsible for transportation of prisoners arrested pursuant to warrant or for violation of state criminal laws. See 50 Op. Att'y Gen. 47, 49 (1961).
Paraphrasing your second question, you ask:
 2) May a sentencing court that imposes county jail time as a condition of probation suspend that jail time while the probationer receives hospital care? If so, who is responsible for the cost of hospital care after the jail term is suspended?
You describe the following situation. A convicted defendant is placed on probation with the condition that he serve time in the county jail. During the probationer's jail confinement, the sheriff transfers him to a local hospital, where it becomes clear that he will need extended care. Two days later, the trial court suspends the jail time for the duration of probationer's hospital stay. *Page 253 
It is my opinion that a sentencing court that imposes county jail time as a condition of probation may suspend that jail time while the probationer receives hospital care.
Section 973.09(1)(a) authorizes a trial court to place certain persons convicted of crime on probation to the Department of Health and Social Services (DHSS). Section 973.09(4) provides that the court "may also require as a condition of probation that the probationer be confined during such period of the term ofprobation as the court prescribes, but not to exceed one year." This statute clearly allows a trial court to fix the specific time that a probationer must spend in a county jail.
Section 973.09(3)(a) states: "Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." Under this provision, the trial court has continuing jurisdiction to modify the conditions of probation for cause. SeeState v. O'Connor, 77 Wis.2d 261, 295, 252 N.W.2d 671 (1977). InState v. Gerard, 57 Wis.2d 611, 625, 205 N.W.2d 374, appealdismissed, 414 U.S. 804 (1973), the Wisconsin Supreme Court indicated that the "`cause' contemplated by the statute includes impossibility, undue hardship and probably other causes." It is my opinion that extended hospitalization of a probationer fits this definition of "cause," entitling the trial court to suspend the probationer's county jail time. In conjunction, it should be noted that the trial court is not suspending a "sentence" when it modifies jail time as a condition of probation, because probation is not a "sentence." Prue v. State, 63 Wis.2d 109, 114,216 N.W.2d 43 (1974).
As discussed, section 53.38 governs payment of the costs of hospital care for prisoners transferred from the county jail. When a trial court suspends a probationer's jail time, the probationer is no longer in the physical custody of the sheriff, although he remains in the legal custody of DHSS. Thus, the probationer ceases to be a "prisoner" within the meaning of section 53.38, and the sheriff no longer provides for the probationer's "security" at the hospital.
It is my opinion, therefore, that, prior to suspension of the probationer's jail term, section 53.38 governs liability for the costs of probationer's hospital care. It also is my opinion that, after the trial court suspends a probationer's jail time, the probationer himself is liable for the costs of his care, subject to section 49.02(5), the *Page 254 
general relief statute. Thus, if a probationer qualified for general relief, the county of his legal residence would be liable for the hospital costs under section 49.02(5)(ar), subject to potential recoupment under section 49.08. It also is conceivable that a certain limited class of probationers would qualify for medical assistance pursuant to section 49.47.
Finally paraphrasing your third question, you ask:
 3) May a sheriff contract with the county department of human services to have the latter agency negotiate with the care provider and process forms relating to the medical care of indigent prisoners held at the county jail?
You assert that, presently, the Monroe County Sheriff is billed at "top-dollar rate" for medical care rendered to indigent prisoners under section 53.38, while the county department of human services is billed at a lower rate for general relief given to indigent county residents under section 49.02. You ask, therefore, whether the sheriff can "enter into a cooperative agreement" with the county department of human services to have that agency handle billing for indigent prisoners in the hope of obtaining lower rates for such prisoners.
It is my opinion that, with county board approval, a sheriff and county department of human services may cooperate in the billing of medical care provided to county jail prisoners.
While section 53.38 requires a sheriff to make decisions concerning medical care of prisoners held in the county jail, it indicates only that the costs of hospital and medical care rendered to such prisoners outside the jail be borne by the county or appropriate municipality. Section 53.38 clearly distinguishes between county jail prisoners who can afford the costs of medical care and those who cannot, and it indicates that the county or municipality that pays the costs of such care for indigent prisoners may recoup those costs pursuant to section49.08, which is part of the public assistance laws.
Section 49.08 provides in pertinent part:
 Recovery of general relief paid. If any person is the owner of property at the time of receiving general relief under this chapter or as an inmate of any county or municipal institution in which the state is not chargeable with all or a part of the inmate's maintenance *Page 255 
or as a tuberculosis patient provided for in ch. 149 and s. 58.06, or at any time thereafter, or if such person becomes self-supporting, the authorities charged with the care of the dependent, or the board in charge of the institution, may sue for the value of the general relief from such person or the person's estate; but except as hereinafter provided the 10-year statute of limitations may be pleaded in defense in any such action to recover general relief.
Clearly, at some point, a determination must be made as to whether a county jail prisoner is "unable to pay" for medical/hospital care within the meaning of section 53.38. Presumably, this determination would be made at the outset of the provision of such care. It makes perfect sense to have the county department of human services participate in this determination.
Section 46.23(3)(b) directs the county board to transfer the powers and duties of section 46.22 to the county department of human services. Among those duties is administration of general relief. Sec. 46.22(1)(b)14., Stats. Although medical care provided to indigent prisoners under section 53.38 is technically distinct from "general relief" as defined in section 49.02, see
69 Op. Att'y Gen. 230 (1980), it is, as a practical matter, a similar species. I see no statutory obstacle, therefore, to the county department of human services processing forms and negotiating the cost of hospital and medical care for county jail prisoners unable to pay for it, lest there be logistical or budgetary constraints. In the face of such considerations, I believe that prior approval of the county board may be necessary.See secs. 59.07(3) and (5), and 65.90, Stats.
DJH:JMF *Page 256