**UNITED STATES of America, Plaintiff,**

**v.**

**Albert W. KOUBA, a/k/a Rusty Kouba, Defendant.**

**Crim. No. C1–85–21.**

United States District Court,
D. North Dakota,
Southwestern Division.

Feb. 18, 1986.

William A. Cohan, Denver, Colo., Irvin B. Nodland, Bismarck, N.D., for plaintiff.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N.D., for defendant.

## ORDER

VAN SICKLE, Senior District Judge.

Defendant moves to dismiss the indictment on grounds of prosecutorial misconduct and abuse of the grand jury process. On January 18, 1986, Magistrate Dwight C.H. Kautzmann issued a memorandum and recommendation, recommending that the motion to dismiss the indictment be denied.

The time allowed for filing objections to that recommendation has expired, and this Court has considered the objections filed.

For the reasons set forth in the well reasoned opinion of Magistrate Kautzmann, which is attached hereto and made a part of this Order,

IT IS ORDERED that Defendant's motion to dismiss the indictment is *denied.*

## MEMORANDUM AND RECOMMENDATION

### Jan. 21, 1986

DWIGHT C.H. KAUTZMANN, United States Magistrate.

Following a two year grand jury investigation which involved the participation of three grand jury panels, the defendant was indicted on nine counts of aiding others in the preparation of false income tax returns, two counts of failing to file his own income tax returns, and one count of suborning perjury. The defendant has moved to dismiss the indictment because of prosecutorial misconduct and abuse of the grand jury process.

## I. ISSUES

### A. THE INTRODUCTION OF SUMMARIES OF PRIOR GRAND JURY TESTIMONY

■ The defendant alleges that the prosecution prepared summaries of testimony of witnesses and then introduced the same through Wendell Mongeon, a criminal investigator for the Internal Revenue Service.

It is true that on more than one occasion Mongeon did give summaries of testimony that had been given to prior grand juries. Further, it is true that Mongeon gave summaries of interviews he did of witnesses.

However, the record is devoid of any evidence that they were in fact misleading or that the grand jury based its indictment completely on Mongeon's summaries.

For example, in counts eight, nine, ten, eleven, and twelve of the indictment, the individuals Donald Stoltz, Dale Burkhart, William Bernhardt, and defendant Albert Kouba did appear personally in front of the grand jury and did testify. Even if Mongeon did give summaries to the later grand juries, the indicting grand jury would have access to the original transcripts. Therefore, as to those counts there is no merit to this claim.

At the November 22, 1985, hearing before the Magistrate on the motion to dismiss the indictment, no evidence was presented to show in fact that any of the summaries were misleading or perjured.

█ If it is the contention of the defendant that the evidence given in the summaries was misleading because supposedly exculpatory evidence was not included in the summaries, it is clear that the prosecution has no duty to present the same unless the evidence is "substantial evidence negating guilt." *See United States v. Lame*, 716 F.2d 515, 518 (8th Cir.1983); *United States v. Levine*, 700 F.2d 1176, 1181 (8th Cir. 1983).

From a review of the exhibits presented to your Magistrate, it appears that reading the evidence in the light most favorable to the defendant there is no "substantial evidence negating guilt" that the prosecution should have presented to the grand jury.

### B. "SPECIAL AGENT OF THE GRAND JURY"

█ The defendant alleges that Mongeon improperly indicated to witnesses that he was a "special agent of the grand jury," and that this misconduct warrants dismissal of the indictment.

At the November 22, 1985 hearing, Mongeon admitted that he did in fact use the term "agent of the Grand Jury." However, the record reflects that he only did this once, during his interview of Anna

Evinger. The defendant was not charged with any misconduct concerning the Anna Evinger tax return.

However, even if it was a calculated misstatement and improper conduct, there is no showing of prejudice to the defendant. [either in the totality of the evidence submitted to the grand jury and more specifically in that the grand jury returned no count in its bill of indictment relating to the defendant's conduct concerning Anna Evinger.] *See United States v. Carr*, 764 F.2d 496, 498 (8th Cir.1985) (although it is improper for a government investigator to use the phrase "agent of the grand jury" the indictment will not be dismissed unless the defendant shows he was prejudiced by the error).

The defendant relies upon the case of *United States v. Kilpatrick*, 594 F.Supp. 1324 (D.Colo.1984), to support his contention that Mongeon's representation that he was an agent of the grand jury requires dismissal of the indictment. *Kilpatrick*, however, is factually distinguishable from the instant case. In *Kilpatrick* the court found several acts of misconduct related to the use of the "special agents of the grand jury" in addition to the mere use of the phrase. *See id.* at 1328–1330.

### C. OTHER PROSECUTORIAL MISCONDUCT AND ABUSE OF THE GRAND JURY

#### 1. ADMINISTERING OATHS

█ The defense also alleges that Mongeon administered oaths before the grand jury. In reading all of the exhibits presented to your Magistrate, the facts prove just the opposite. Never in any of the transcripts does the record show that Mongeon did in fact administer oaths to any of the witnesses.

If the contention is that Mongeon during his investigation administered oaths to witnesses he was interviewing outside of the presence of the grand jury, it appears that he is authorized to do so by law. *See* 26 U.S.C. § 7622(a), (b). At the November 22, 1985, hearing, the defense presented no

evidence to show that Mongeon was not impowered to administer oaths pursuant to 26 U.S.C. § 7622.

## 2. GRAND JURY SUBPOENAS

■ The defendant contends that there were improprieties committed by the prosecutor in the use of grand jury subpoenas. First, defendant claims that the subpoenas were issued by the IRS. Second, he claims that Mongeon released witnesses from the subpoena. Finally, defendant contends that it was improper for the subpoenas to present an alternative method of compliance other than appearing in person before the grand jury. The court finds that there was no impropriety concerning the use of the grand jury supoenas.

The record is devoid of any evidence that the subpoenas were not issued properly. The record reflects that the subpoenas were properly issued by the clerk of court. The fact that some of the subpoenas were served by IRS agents is not improper. The record also lacks any evidence that the IRS agents released witnesses from the subpoenas; the record reflects that the grand jury performed this function.

■ The court finds that it was not improper for the subpoena to present the option of giving a statement and presenting documents to Mongeon in lieu of appearing before the grand jury. The alternative compliance provision was not improper because anyone who wanted to testify before the grand jury could do so, *United States v. McClintock*, 748 F.2d 1278, 1286 (9th Cir.1984), and it is an acceptable grand jury procedure for a subpoena duces tecum to be satisfied by delivery of the documents to investigative personnel, *United States v. Phelps*, 526 F.Supp. 686, 689 (W.D.Okla.1981).

## 3. CUSTODIAN OF GRAND JURY RECORDS

Defendant claims that prosecutorial misconduct and abuse of the grand jury exists because the prosecutor and Mongeon, the IRS agent assisting the prosecutor, retained physical custody of the records for the grand jury and because they opened

mail addressed to the foreman of the grand jury. The court finds the allegations to be without merit.

■ It is proper for the prosecutor to screen documents, organize the presentation of documents, and to be the custodian of documents on behalf of the grand jury. *See United States v. Universal Manufacturing Co.*, 525 F.2d 808, 812 (8th Cir. 1975); *United States v. Mandel*, 415 F.Supp. 1033, 1041 (D.Md.1976); *Phelps*, 526 F.Supp. at 689. In light of the prosecutor's function in screening and organizing the presentation of documents before the grand jury, the court finds that it was not improper for the prosecutor or the IRS agent assisting the prosecutor to open mail addressed to the grand jury. Moreover, no prejudice could have resulted from this practice as the record reflects that the contents of the mail opened by the prosecutor or the IRS agent were presented to the Grand Jury.

## 4. RULE 6(e) DISCLOSURE VIOLATION

■ Another allegation of prosecutorial misconduct and abuse of the grand jury is that the prosecution violated the secrecy of the grand jury proceedings by permitting the IRS to use grand jury materials to further civil tax cases and by disclosing to witnesses that Mr. Kouba was the target of the grand jury investigation.

Defendant made no showing at the November 22, 1985, hearing that any grand jury materials from this case have been used by the IRS in civil tax proceedings. The claim therefore lacks factual substantiation.

■ The court finds that even if the prosecution disclosed to witnesses that Mr. Kouba was the target of the grand jury investigation, it does not warrant a finding of a rule 6(e) violation for two reasons. First, any of the witnesses would have known Mr. Kouba was the target of the investigation based upon the nature of the questions being asked. Second, there is

evidence that Mr. Kouba called some of the witnesses and informed them that he was the target of the investigation. The court is unwilling to permit Mr. Kouba to complain that the government cannot do what he did himself as it concerns disclosure of the grand jury target.

■ There is ample evidence in the record that shows even if witnesses did not know Mr. Kouba was the target of the grand jury investigation that he was present in the halls when some of them reported to testify and further, he had communications with them concerning their rights as witnesses. Even wearing blinders this court can perceive the obvious, as no doubt did the witnesses.

■ The court finds that the government did not commit a rule 6(e) violation and that if such a violation occurred, it did not prejudice Mr. Kouba. The general remedy for a rule 6 disclosure violation is contempt and absent a showing of prejudice to the defendant and a pattern of prosecutorial misconduct a rule 6(e) violation does not warrant dismissal of an indictment. *See United States v. Anderson*, 577 F.Supp. 223, 230 (D.Wyo.1983).

### 5. RULE 6(d) UNAUTHORIZED PRESENCE VIOLATION

■ Next, the defendant contends that Mongeon was present in the grand jury room when Dale Burkhart and Albert Kouba testified before the grand jury. The record of the proceedings in both instances does not disclose that Mongeon was present. Further, at the hearing of November 22, 1985, no evidence was presented by the defense to show that Mongeon was in fact present.

Absent a clear indication in the transcripts of Mongeon's presence and absent any evidence by the defense to rebut Mongeon's denial that he was present at any of the grand jury proceedings while another witness was present (*see* Transcript of Hearing on Motion to Dismiss Indictment, November 22, 1985, p. 103), I conclude that it did not occur.

■ The defendant also argues that the prosecutor abused the grand jury process by making comments before the grand jury. The defendant also claims that by making the comments, the prosecutor became a witness before the grand jury and that his presence in the proceedings while witnesses testified violated rule 6(d).

The court finds that the prosecutor's comments were not overzealous. The court further finds that the prosecutor did not usurp the power of the grand jury to make independent findings by making comments and answering questions. There is nothing in the record submitted to the magistrate that indicates that the Grand Jury did not make its own independent findings. Finally, the court also finds that the prosecutor did not become a witness before the grand jury. Therefore, the court concludes that the prosecutor did not abuse the grand jury process or violate rule 6(d) by making comments before the grand jury.

### 6. WITNESS INVOCATION OF THE FIFTH AMENDMENT PRIVILEGE

■ The defendant also raises a claim that the prosecution engaged in misconduct and abused the grand jury process by calling witnesses solely for the purpose of having them invoke their fifth amendment privilege before the grand jury. Defendant's claim is without merit.

Defendant's reliance on *Kilpatrick* in support of this contention is misplaced. In *Kilpatrick*, the purpose of the prosecutor in calling witnesses knowing that they would invoke their fifth amendment privilege was not to lay a statutory predicate for immunizing the witnesses but to utilize the witnesses assertions to prejudice the grand jury against the targets. *Kilpatrick*, 594 F.Supp. at 1338. In the present case, by contrast, the record clearly reflects that the witnesses were called to lay the statutory foundation for immunizing the witnesses. There was no misconduct on the part of the prosecutor in calling witnesses before the grand jury knowing they would invoke their privilege against self-incrimination.

## D. JENCKS ACT, BRADY, AND RULE 16

### 1. JENCKS ACT MATERIAL

■ The defense claims that there was a violation of the Jencks Act, 18 U.S.C. § 3500, concerning the transcripts of the testimony of Mongeon on November 29, 1983, January 18, 1984, and August 16, 1984.

However, at trial Mongeon's testimony was summaries of previous witnesses called at trial. His testimony on direct was not specifically related to his testimony before the Grand Jury on November 29, 1983, January 18, 1984, June 20, 1984, and August 16, 1984.

That being the case it would appear that there is no merit to the claim of a Jencks Act violation. It should be noted that in a letter from Charles Miller to William Cohan dated October 10, 1985, Miller states:

"Except for the schedules, we have not included Mongeon's investigative report because we do not consider it to be 3500 material. In other words, we anticipate at this time the subject matter of Mongeon's testimony will be limited to areas which are covered by schedules and other material provided herewith. After Mr. Mongeon testifies, we will consider the report in light of Mr. Mongeon's specific testimony to determine whether or not there might possibly be something which would be considered 3500 material."

The transcript of November 29, 1983 concerns itself with Mongeon's testimony about Anna Evinger, Douglas Lutz, a Mr. Kramer, and Linus Evinger.

As previously stated, none of the indictment counts go to conduct concerning Anna Evinger, Linus Evinger, or Kramer, only as to Lutz.

Since the testimony at trial of Mongeon was a summary of other trial witnesses testimony it appears that this is not Jencks material.

In the transcript of January 18, 1985, Mongeon testifies as to Mr. Burkhart, Mr. Douglas Lutz, Mrs. Lutz, Mrs. Evinger, and subpoena returns.

Again, the indictment does not concern Evinger, but does concern itself with the others. Burkhart, Lutz, Mrs. Lutz, and Mrs. Evinger all testified at trial.

The summaries of Mongeon only dealt with their direct testimony at trial. It again appearing that this contention is not in fact Jencks Act material.

The same analysis as above is true as to the June 20, 1984 and August 16, 1984 appearances before the Grand Jury by Mongeon.

### 2. BRADY AND RULE 16 MATERIAL

■ The Donald Kramer transcript of November 29, 1983 has been read in total by your magistrate in light of the defendant's contention of a *Brady* violation.

The defendant claims that there is exculpatory evidence contained in Mr. Kramer's testimony.

Although Kramer testifies in so many words that he trusts Mr. Kouba and has placed his faith in God and that Mr. Kouba is a Christian man there is no evidence showing or tending to show exculpation as to any of the counts in the indictment.

At the best Kramer's evidence can be construed in certain areas as character evidence of Mr. Kouba. I find no violation of *Brady* after having read the Kramer testimony. It should be noted that Mr. Kouba did have people testify as to his character at trial and as such even if he would have used Mr. Kramer as a witness it would have been cumulative evidence in any event.

## E. IMMUNITY

■ In the case before the bar, the defendant contends that the use of "pocket immunity" here should require the dismissal of the indictment.

The following witnesses were offered informal immunity but refused to testify without the formal grant of immunity pursuant to 18 U.S.C. §§ 6002 and 6003: Burkhart, Jesfjeld, Donald Stoltz, Joe Stoltz, Laufer, and William Bernhardt. The prose-

cution did not force these people to testify nor did the prosecution attempt to require them to testify when they indicated they wanted to follow sections 6002 and 6003.

Mr. Kramer and Daniel Bernhardt testified with informal grants of immunity.

The following witnesses were not offered informal immunity or for that matter given either informal or formal immunity: Evinger, Lutz, Damian Bernhardt, and Lew Bernhardt.

The Supreme Court of the United States seems to frown upon informal grants of immunity: "We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires." *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984).

This court agrees with the Supreme Court and further notes that the *most* important function of a grand jury is to stand between the prosecutor and the suspect as unbiased evaluators of the evidence. If they do not perform this function then the procedure and the safeguard contained therein is at best a farce and at worst a kangaroo court.

■ The prosecution attempted, in this case, to use informal or "pocket immunity." However, the reality here is that formal immunity was granted to all those except Kramer and Daniel Bernhardt.

As to Kramer and Daniel Bernhardt, the immunity poses serious problems since it circumvents the statute and leaves an inadequate record of the scope of the immunity granted them. However, the problem it creates goes more to Kramer's and Daniel Bernhardt's fifth amendment rights than it does to Mr. Kouba and this case. But, informal immunity is a damnable practice and the use of it should stop both for the sake of the witnesses and the Grand Jury.

■ The two cases that the defense relies upon to justify a dismissal of the indictment based on the immunity issue are *United States v. Anderson*, 577 F.Supp. 223 (D.Wyo.1983) and *United States v. Kilpatrick*, 594 F.Supp. 1324 (D.Colo.1984).

In both *Anderson* and *Kilpatrick* the court used the totality of the circumstances in determining whether to dismiss the indictment. I apply the same test here and find that two informal grants of immunity in contravention of 18 U.S.C. §§ 6002 and 6003 are not sufficient to dismiss the indictment.

But, should the prosecution read this recommendation to mean informal immunity is condoned by the United States District Court for the District of North Dakota, they read it wrong. My recommendation is that the Court be ever vigilant to see that it never happens on a regular basis throughout a grand jury proceeding.

Based on the totality of the circumstances test, there is not a sufficient showing of prejudice to the defendant in that as to six of eight witnesses in question the formal grant of immunity was made and the prosecution did not violate the statute. Further, the record shows that the prosecutor involved here was not overzealous when it became evident to him that a formal grant of immunity was necessary.

## II. CONCLUSION

The motion for dismissal of the indictment on the issues raised should be denied for the reasons set forth in the opinion above.